**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MARY H. WOJNO, In Her Capacity as the Trustee of the MARY H. WOJNO REVOCABLE TRUST, on Behalf of Itself and All Others Similarly Situated, 1609 Gondola Park Drive Venice, FL 34292, | No. <br><br> **CLASS ACTION AND** <br> **DERIVATIVE COMPLAINT** |
|                  Plaintiff, <br>    v. | **JURY TRIAL DEMANDED** |
| FIRSTMERIT CORPORATION III Cascade Plaza, 7th Floor Akron, OH 44308 | |
| Registered Agent: Statutory Agent Corporation 52 East Gay Street Columbus, OH 43215, | |
|                  Nominal Defendant. | |
| HUNTINGTON BANCSHARES, Inc., Registered Agent: CT Corporation System 1300 East Ninth Street Cleveland, OH 44114, | |
| WEST SUBSIDIARY CORPORATION, Registered Agent: CT Corporation System 1300 East Ninth Street Cleveland, OH 44114, | |

PAUL G. GRIEG,
2916 Nottingham Lane
Chagrin Falls, OH 44022,

JOHN C. BLICKLE,
470 Saint Andrews Drive
Akron, OH 44303,

PHILLIP A. LLOYD II,
2114 Firestone Trace
Akron, OH 44333,

TERRY L. HAINES,
1375 Ledgewood Drive
Akron, OH 44333,

R. CARY BLAIR,
3382 Hardwood Hollow Road
Medina, OH 44256,

KAREN S. BELDEN,
2710 Dunkeith Drive NW
Canton, OH 44708

ROBERT W. BRIGGS,
8288 Maplevale Drive
Canfield, OH 44406,

RICHARD COLELLA,
344 Copper Creek
Amherst, OH 44401,

GINA D. FRANCE,
5373 Rustic Hills Drive
Medina, OH 44256,

J. MICHAEL HOCHSCHWENDER,
1224 Country Club Drive
Akron, OH 44313,

STEVEN H. BAER,
512 Forest Cove Road
Lake Bluff, IL 60044,

2

RUSS M. STROBEL,
44 Woodley Road
Winnetka, IL 60093,

LIZABETH A. ARDISANA,
5954 Pontiac Trail
West Bloomfield, MI 48323,

ROBERT S. CUBBIN,
6650 Oakhills Drive
Bloomfield Hills, MI 48301,

                    Defendants,

Plaintiff Mary H. Wojno, in her capacity as the trustee of the Mary H. Wojno Revocable Trust, through undersigned counsel, brings this Complaint on behalf of herself and the holders of the common stock of FirstMerit Corporation ("FirstMerit" or the "Company"), and derivatively on behalf of FirstMerit itself, against (1) the members of the Board of Directors (as defined herein) of FirstMerit for breaching their fiduciary duties and (2) Huntington Bancshares, Inc. ("Huntington") and West Subsidiary Corporation ("Merger Sub") for aiding and abetting these breaches.

This action seeks to enjoin the merger of Merger Sub with and into FirstMerit, with the Company surviving and thereafter merging with and into Huntington, with Huntington surviving (collectively, the "Proposed Transaction"). This action also seeks an order requiring that the FirstMerit Board comply with their fiduciary obligations.

The allegations of this Complaint are based on Plaintiff's knowledge as to herself, and on information and belief based upon, among other things, the investigation of counsel and publicly available information, as to all other matters.

3

## NATURE OF THE ACTION

1.     This is a shareholder class action and derivative action brought by Plaintiff on behalf of FirstMerit shareholders and nominally on behalf of FirstMerit itself (which is named herein as a nominal defendant) against Defendants for breaches of fiduciary duty, and/or aiding and abetting those breaches, in connection with the Board's decision to sell the Company to Huntington pursuant to an unfair process.  This action does not challenge the specific price of the Proposed Transaction.

2.     On January 26, 2016, FirstMerit announced that it had entered into a definitive merger agreement (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into FirstMerit, with the Company surviving and thereafter merging with and into Huntington, with Huntington surviving the Proposed Transaction.  Pursuant to the terms of the Merger Agreement, FirstMerit stockholders will receive 1.72 shares of Huntington common stock and $5 per share in cash for each share of FirstMerit common stock that they own (collectively, the "Merger Consideration").  The Merger Consideration does not include a collar.

3.     The Proposed Transaction is the result of a flawed and unfair process marred by conflicts of interest, not the least of which is that the Company's Chairman of the Board, President, and Chief Executive Officer ("CEO") and several of the Company's directors stand to make millions in connection with the Proposed Transaction.  Meanwhile, the same Individual Defendants will be able to cash out or convert otherwise illiquid blocks of stock, and four members of the Board will become members of the Huntington board of directors.

4.     To secure these benefits, the Individual Defendants further exacerbated their breaches of fiduciary duty by agreeing to certain deal protection devices in the Merger

Agreement that will prevent other bidders from making successful competing offers. These include:

- a termination fee provision whereby the Board agreed that FirstMerit would pay Huntington a termination fee of $100,600,000 if it terminates the Proposed Transaction;

- a strict no-solicitation provision that effectively precludes the Board from soliciting bids from any other potential acquirer and requires that the Board cease certain existing communications and negotiations after a certain time;

- an information rights provision that requires the Company to notify Huntington of certain unsolicited competing offers and provide Huntington with information regarding such offers;

- A "no-waiver" provision that requires the Board to enforce any existing confidentiality or standstill agreements; and

- A "force-the-vote" provision that requires the Board to call a meeting of its stockholders to adopt the Merger Agreement, even if the Board changes its recommendation in support thereof.

These provisions substantially and improperly limit the Board's ability to investigate and pursue superior proposals and alternatives and, absent judicial intervention, guarantee the consummation of the Proposed Transaction.

5.    The Proposed Transaction is not in the best interests of FirstMerit stockholders. The Company is financially sound, having just realized its **67th consecutive quarter of profitability**, and was poised for ongoing standalone success that would have generated a higher value than the Merger Consideration.  Indeed, based on the strength of the consistently positive

financial results achieved by the Company, regular Company analysts – including the Company's own financial advisor – set standalone price targets above the Merger Consideration in the lead up to the announcement of the Merger Agreement.

6. In sum, the Proposed Transaction is the result of a flawed process designed to benefit Huntington and secure material personal benefits for the Individual Defendants. Each of the Individual Defendants has breached his fiduciary duties and/or has aided and abetted such breaches by favoring Huntington's or his own financial interests over those of FirstMerit and its public, non-insider shareholders. What is more, because the Individual Defendants control the business and affairs of FirstMerit, and are thus in possession of non-public information concerning the Company's current and future prospects, there is an imbalance and disparity of knowledge between the Board and FirstMerit's public stockholders that renders it inherently unfair for the Board to pursue any Proposed Transaction in which they will reap disproportionate benefits. Finally, in facilitating the acquisition of FirstMerit by Huntington through a flawed process, each of the Defendants breached and/or aided the other Defendants' breaches of their fiduciary duties.

7. For these reasons and as set forth in detail herein, Plaintiffs seek to enjoin the Proposed Transaction.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. §1332 because Plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

9. Personal jurisdiction exists over defendants because FirstMerit is incorporated in Ohio, and each defendant is either a corporation that conducts business in and maintains

6

operations within this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper under 28 U.S.C. §1391(b) because a substantial portion of the transactions wrongs complained of herein occurred in this District.

## PARTIES

**A.     Plaintiff**

11.     Plaintiff Mary H. Wojno brings this suit in her capacity as the trustee of the Mary H. Wojno Revocable Trust, which is, and at all relevant times was, a holder of FirstMerit stock. Plaintiff Wojno is a citizen of the State of Florida.

**B.     Defendants**

12.     Nominal Defendant FirstMerit is a corporation organized and existing under the laws of the state of Ohio with its principal executive offices located at III Cascade Plaza, Akron, Ohio 44308.  Defendant FirstMerit is a citizen of the State of Ohio.

13.     Defendant Paul G. Greig has served as the Company's Chairman of the Board, President, and CEO since May 2006 and is also a member of the Company's Executive Committee.  Upon information and belief, Defendant Greig is a citizen of the State of Ohio.

14.     Defendant John C. Blickle has served as the Company's Lead Director since July 2015 and as one of its directors since 1990.  Defendant Blickle is a citizen of the State of Ohio.

15.     Defendant Phillip A. Lloyd, II has served as a director of the Company since 1988.  Upon information and belief, Defendant Lloyd is a citizen of the State of Ohio.

16.     Defendant Terry L. Haines has served as a director of the Company since 1991.

7

Upon information and belief, Defendant Haines is a citizen of the State of Ohio.

17.     Defendant R. Cary Blair has served as a director of the Company since 1996. Upon information and belief, Defendant Blair is a citizen of the State of Ohio.

18.     Defendant Karen S. Belden has served as a director of the Company since 1996. Upon information and belief, Defendant Belden is a citizen of the State of Ohio.

19.     Defendant Robert W. Briggs has served as a director of the Company since 1996. Upon information and belief, Defendant Briggs is a citizen of the State of Ohio.

20.     Defendant Richard Colella has served as a director of the Company since 1998. Upon information and belief, Defendant Colella is a citizen of the State of Ohio.

21.     Defendant Gina D. France has served as a director of the Company since 2004. Upon information and belief, Defendant France is a citizen of the State of Ohio.

22.     Defendant J. Michael Hochschwender has served as a director of the Company since 2005.  Upon information and belief, Defendant Hochschwender is a citizen of the State of Ohio.

23.     Defendant Steven H. Baer has served as a director of the Company since 2007. Upon information and belief, Defendant Baer is a citizen of the State of Illinois.

24.     Defendant Russ M. Strobel has served as a director of the Company since 2012. Upon information and belief, Defendant Strobel is a citizen of the State of Illinois.

25.     Defendant Lizabeth A. Ardisana has served as a director of the Company since 2013.  Upon information and belief, Defendant Ardisana is a citizen of the State of Michigan.

26.     Defendant Robert S. Cubbin has served as a director of the Company since 2013. Upon information and belief, Defendant Cubbin is a citizen of the State of Michigan.

27.     Defendants Greig, Blickle, Lloyd, Haines, Blair, Belden, Briggs, Colella, France,

Hochschwender, Baer, Strobel, Ardisana, and Cubbin form the Board of Directors of FirstMerit and are collectively referred to herein as the "Board" or the "Individual Defendants."

28.     Defendant Huntington is a Maryland corporation with its principal executive offices located at Huntington Center, 41 South High Street, Columbus, Ohio 43287.  Defendant Huntington is a citizen of the State of Ohio.

29.     Defendant Merger Sub is an Ohio corporation and a wholly-owned subsidiary of Huntington.  Defendant Merger Sub is a citizen of the State of Ohio.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

30.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiffs and the other public stockholders of FirstMerit and owe them a duty of care, loyalty, good faith, candor, and independence.

31.     By virtue of their positions as directors and/or officers of FirstMerit, the Individual Defendants, at all relevant times, had the power to control and influence FirstMerit, did control and influence FirstMerit, and caused FirstMerit to engage in the practices complained of herein.

32.     To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that: (i) adversely affects the value provided to the Company's stockholders; (ii) favors themselves or discourages or inhibits alternative offers to purchase control of the corporation or its assets; (iii) will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public stockholders; and/or (iv) contractually prohibits the Individual Defendants from complying with or carrying out their fiduciary duties.

33.     In accordance with their duties of loyalty and good faith, the Individual

Defendants are obligated to refrain from: (i) participating in any transaction where the Individual Defendants' loyalties are divided; (ii) participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and/or (iii) unjustly enriching themselves at the expense or to the detriment of the public stockholders.

34.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, candor, good faith, and independence owed to Plaintiff and other public stockholders of FirstMerit, or are aiding and abetting others in violating those duties.

35.     Because defendants are knowingly or recklessly breaching their fiduciary duties of loyalty, good faith, and independence in connection with the Proposed Transaction, they bear the burden of proving the entire fairness of the Proposed Transaction.

36.     The Individual Defendants also owe the Company's shareholders a duty of candor, which includes the disclosure of all material facts concerning the Proposed Transaction and. The Individual Defendants are knowingly or recklessly breaching their fiduciary duties of candor by failing to disclose all material information concerning the Proposed Transaction and/or aiding and abetting other Defendants' breaches.

## AIDING AND ABETTING

37.     In addition to the wrongful conduct herein alleged as giving rise to primary liability, certain of the defendants further aided and abetted and/or assisted each other in the breach of their respective duties as herein alleged.

38.     During all relevant times hereto, the defendants, and each of them, initiated a

10

course of conduct that was designed to: (i) favor Huntington and the Individual Defendants; (ii) permit Huntington to acquire FirstMerit pursuant to a defective sales process; and (iii) permit Huntington to acquire FirstMerit without FirstMerit's stockholders being fully informed of all material information relating to the Proposed Transaction. In furtherance of this plan and course of conduct, Defendants, and each of them, took the actions as set forth herein.

39. Each of the defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions, as particularized herein, to substantially assist the commission of the wrongdoing complained of, each defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to, and furtherance of, the wrongdoing. Defendants' acts of aiding and abetting included, inter alia, the acts each of them are alleged to have committed in furtherance of the common enterprise and common course of conduct complained of herein.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action on behalf of herself and as a class action on behalf of all other holders of FirstMerit common stock who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the defendants.

41. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of January 22, 2016, there were approximately 165,754,538 outstanding shares of FirstMerit common stock. The actual number of public stockholders of FirstMerit will be ascertained through discovery.

b.     There are questions of law and fact that are common to the Class, including the following:

i)     whether the Individual Defendants have breached their fiduciary duties with respect to Plaintiffs and the other members of the Class in connection with the Proposed Transaction;

ii)    whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of FirstMerit;

iii)   whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives, including offers from interested parties for the Company or its assets;

iv)    whether the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to Plaintiffs and the other members of the Class;

v)     whether Huntington and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

vi)    whether Plaintiffs and other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

c.     Plaintiff is an adequate representatives of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class. A class action is superior to other available methods for fairly and efficiently adjudicating this case.

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## DERIVATIVE AND DEMAND ALLEGATIONS

42.     Plaintiff also brings this action derivatively in the right and for the benefit of FirstMerit to redress injuries suffered, and to be suffered, by FirstMerit as a direct result of the breaches of fiduciary duty by the Individual Defendants.

43.     Plaintiff is and was an owner of FirstMerit stock during all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

44.     Plaintiff will adequately and fairly represent the interests of FirstMerit and its shareholders in enforcing and prosecuting their rights.  Indeed, Plaintiff has taken the steps necessary to file this action and has retained counsel experienced in such litigation.

45.     Demand on the Board is excused because FirstMerit would suffer irreparable injury if demand were required to be made on the Board.  The delay ensuing from a requirement that demand be made would allow the Individual Defendants to effectuate the Proposed Transaction to the irreparable harm of FirstMerit.  According to the Company's press release, defendants expect to complete the Proposed Transaction in the third quarter of 2016.  Once the Proposed Transaction is effectuated, there is no feasible way to "unscramble the eggs" and no

way for FirstMerit to recover any losses.  Demand is excused because irreparable harm would be caused to the Company due to a demand or delay in the Company's response to a demand.

46.    Plaintiff has also not made a demand on the Board to file suit for the breaches of fiduciary duty alleged herein because such a demand would be a futile and useless act that would likely lead to FirstMerit suffering irreparable injury, particularly for the following reasons:

a.  Each of the key officers and directors knew of the wrongdoing complained of herein;

b.  Each of the key officers and directors is interested and/or involved in the Proposed Transaction;

c.  Each member of the Board has been named as a defendant to this lawsuit;

d.  In order to bring this suit, all of the directors of FirstMerit would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

e.  The acts complained of constitute violations of the fiduciary duties owed by FirstMerit's officers and directors and these acts are incapable of ratification;

f.  Any suit by the directors of FirstMerit to remedy these wrongs would likely expose the Individual Defendants and FirstMerit to further civil actions being filed against one or more of the Individual Defendants; therefore, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

g.  Each member of the FirstMerit Board is, directly or indirectly, the recipient of remuneration paid by the Company and other emoluments by virtue of their Board membership in the Company, the continuation of which is dependent upon their

14

cooperation with the other members of the Board, and their participation and acquiescence in the wrongdoing set forth herein, and they are therefore incapable of exercising independent objective judgment in deciding whether to bring this action;

h.  Because of their association as directors of the Company and their positions as present employees, the directors are dominated and controlled so as not to be capable of exercising independent objective judgment; and

i.  Plaintiff's claims include allegations that a majority of the Board was involved in self-dealing and mismanagement, which extinguishes any possibility that an impartial majority of the Board could vote in favor of and oversee this suit.

47.  Demand on the Board is further excused because, upon information and belief, the Board is protected by directors' and officers' liability insurance policies against personal liability for certain breaches of fiduciary duty alleged in this complaint, which they caused the Company to purchase with corporate funds.  However, upon information and belief, in light of certain changes in the language of such policies in recent years, the policies at issue may not protect the Individual Defendants for certain actions brought directly by FirstMerit against them. Accordingly, if the Individual Defendants were to sue themselves or certain of the officers of FirstMerit, there may be no insurance protection and they may be personally liable.  For this reason, they will not sue themselves.  Conversely, because this suit is brought derivatively, the policies may provide coverage and thus a further avenue for FirstMerit to recover against the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

**A.**     **Corporate Background**

48.     FirstMerit is a financial services company headquartered in Akron, Ohio, with assets of approximately $25.5 billion as of December 31, 2015, and 366 banking offices and 400 ATM locations in Ohio, Michigan, Wisconsin, Illinois and Pennsylvania. FirstMerit provides a range of banking and other financial services to consumers and businesses through its core operations. Its principal affiliates include FirstMerit Bank, N.A. and FirstMerit Mortgage Corporation.

49.     Huntington is regional bank holding company headquartered in Columbus, Ohio, with a network of more than 750 branches and more than 1,500 ATMs across six Midwestern states.  The Huntington National Bank and its affiliates provide consumer, small business, commercial, treasury management, wealth management, brokerage, trust, and insurance services. Huntington also provides auto dealer, equipment finance, national settlement and capital market services that extend beyond its core states.  Huntington describes itself as having $71 billion in assets.

**B.**     **The Proposed Transaction**

50.     On January 26, 2016, FirstMerit and Huntington issued a joint press release announcing the Proposed Transaction, which provides in pertinent part:

**HUNTINGTON    BANCSHARES    TO    STRENGTHEN    MIDWEST FRANCHISE    WITH    FINANCIALLY    AND    STRATEGICALLY ACCRETIVE MERGER WITH FIRSTMERIT CORPORATION**

**Columbus, Ohio and Akron, Ohio –** Huntington Bancshares Incorporated (NASDAQ:  HBAN;  www.huntington.com)  and  FirstMerit  Corporation (NASDAQ:  FMER;  www.firstmerit.com)  jointly announced today the signing of a definitive merger agreement under which Ohio-based FirstMerit Corporation, the parent company of FirstMerit Bank, will merge into Huntington in a stock and cash transaction. Based on the closing price of Huntington's common shares on

16

January 25, 2016 of $8.80, the total transaction value is approximately $3.4 billion, including outstanding options and other equity- linked securities.

The partnership brings together two companies who have served their respective communities for 150 years or more, meeting the banking needs of consumers and small and middle market businesses across the Midwest. Huntington recently posted record earnings for 2015, including a 10% increase in net income and a 13% increase in earnings per common share, driven by ongoing growth in revenues, deposits, and lending. FirstMerit today announced their 67th consecutive quarter of profitability, reflecting strong organic loan growth and continued balance sheet strength. The pro forma company is expected to have nearly $100 billion in assets and will operate across an eight-state Midwestern footprint. The combination will create the largest bank in Ohio, based on deposit market share. Huntington will also expand its operations into the attractive new markets of Chicago and Wisconsin.

"We are very pleased to come together with FirstMerit to create a regional bank with added customer convenience, an enhanced portfolio of products for consumers and businesses, as well as strong market share. I believe the strength of this deal is that both organizations already understand the needs and goals of our Midwestern customers and communities. Our combined track records of service excellence and efficient financial management will add value for our collective shareholders, customers, communities, and colleagues," said Steve Steinour, Huntington chairman, president, and CEO.

"Joining forces with Huntington will give us an opportunity to combine both companies' commercial, small business, wealth, and consumer expertise while giving all of our customers greater access to services. We will also leverage our strong credit culture and continue our mutual tradition of community involvement to help our Midwest markets grow. We have every confidence that the integration with Huntington will be smooth and seamless for our customers and our communities, and are pleased with the commitments that Huntington has made to our employees and communities," said Paul Greig, FirstMerit chairman, president, and CEO.

Under the terms of the definitive agreement, FirstMerit will merge with a subsidiary of Huntington Bancshares, and FirstMerit Bank will merge with and into The Huntington National Bank. In conjunction with the closing of the transaction, four independent members of the FirstMerit Board of Directors will join the Huntington Board, which will be expanded accordingly.

Shareholders of FirstMerit Corporation will receive 1.72 shares of Huntington common stock, and $5.00 in cash, for each share of FirstMerit Corporation common stock. The per share consideration is valued at $20.14 per share based on the closing price of Huntington common stock on January 25, 2016.

The transaction is expected to be completed in the third quarter of 2016, subject to

the satisfaction of customary closing conditions, including regulatory approvals and the approval of the shareholders of Huntington and FirstMerit Corporation.

Huntington expects the acquisition to be accretive to earnings per share in 2017, excluding one-time merger-related expenses, and approximately 10% accretive to earnings per share in 2018, the first full year after all expected synergies are implemented.

Pro forma tangible capital equity to tangible assets (TCE ratio) is projected to be 7.1% at closing, and pro forma regulatory common equity Tier 1 ratio (CET1 ratio) is projected to be 8.7% at closing on a fully phased-in Basel III basis. Huntington will not re-submit its 2015 CCAR capital plan, and intends to forgo the remaining $166 million of share repurchase capacity under its 2015 CCAR capital plan. Huntington will include FirstMerit Corporation in its 2016 CCAR capital plan proposal and expects the plan will include share repurchases.

C.      **FirstMerit Was Poised for Substantial Standalone Growth and Profitability and the Merger Consideration Undervalues the Company's Inherent, Standalone Market Value**

        51.     As noted above, pursuant to the terms of the Merger Agreement, FirstMerit shareholders will receive 1.72 shares of Huntington common stock and $5.00 in cash for each share of FirstMerit common stock that they own (previously defined as the "Merger Consideration"). Based on the closing price of Huntington common stock on January 25, 2016, the Merger Consideration was valued at approximately $20.14 per FirstMerit share.

        52.     The Company's standalone prospects far outweigh the value offered in the Proposed Transaction.  For example, the Merger Consideration represents a significant discount to FirstMerit's 52-week standalone high of $21.45 per share, which it reached on June 26, 2015. Indeed, the stock closed above the implied value of the Merger Consideration as recently as December 1, 2015, when it closed at $20.39 per share.

        53.     What is more, the Merger Consideration is contrary to recent guidance from regular Company analysts.  For example, on December 21, 2015, Stephens, a regular Company analyst set a standalone price target of $21.00 per share for the Company's stock, "[a]fter spending time with senior management of FirstMerit" and gaining "greater confidence in the

Company's ability to maintain what has been a consistent story for the past few years: grow organically, control expenses and be smart stewards of capital." Similarly, on October 28, 2015, Miller Tabak + Co., LLC, another regular Company analyst, set a standalone price target for the Company's stock of $20.33 per share, noting that FirstMerit's "balance sheet has a preponderance of adjustable rate loans supported by zero interest paying deposits. **This is a very strong strategic position to have if and when the Fed raises its Fed Funds rate"** (emphasis in original). RBC Capital Markets similarly set a price target of $21.00 per share on October 27, 2015.

54. And, on December 15, 2015, when the Company's stock was trading at just $18.30 per share, Sandler O'Neill ("Sandler"), the Company's financial advisor in connection with the Proposed Transaction, set a standalone price target of $20.00 per share for the Company's stock – an amount that does not reflect any acquisition or control premium, the addition of which would raise the target well above the Merger Consideration.

55. Even after the Merger Agreement was announced, on January 28, 2016, Sandler set a price target of $24.78 for FirstMerit stock. On January 27, 2016, in light of announcement of the Merger Agreement, Stephens rescinded its previous standalone price target of $21.00 per share. Likewise, in light of the Merger Agreement, on January 26, 2016, RBC Capital Markets downgraded FirstMerit stock (from Outperform to Sector Perform) and dropped its standalone price target from $21.00 per share to $19.00 per share.[1]

56. These standalone price targets are consistent with FirstMerit's stable, long-term growth and consistent history of profitability. Indeed, on January 26, 2016, the same day that it

---

[1] As recently as July 2015, each of Barclays, J.P. Morgan, and Sandler also set standalone price targets of $22.00, $21.50, and $21.00, respectively. And, in June 2014, Barclays set a standalone price target for the Company as high as $24.00 per share.

announced the Merger Agreement, FirstMerit also announced its **67th consecutive quarter of profitability.**  According to the Company, this performance reflected "strong organic loan growth and continued balance sheet strength."

57.    FirstMerit's recent and consistent success extends beyond its stock performance and financials, though. For example, on October 25, 2015, *Money* magazine named the Company the "Best Regional Bank" in the Midwest. Such accolades are largely due to its strong and persistent customer service culture. In fact, for six straight years, FirstMerit has also been rated #1 in *J.D. Power and Associates*' Retail Banking satisfaction survey.

58.    Despite these successes, the Individual Defendants agreed to sell the Company for an implied value of just $20.14 per share. What is more, the Board did not include a collar in the stock portion of the Merger Consideration, which would have insulated FirstMerit stockholders from fluctuations in the market price of Huntington common stock. On the day of the announcement of the Merger Agreement, Huntington stock fell from $8.80 per share (on January 25, 2016) to just $8.05 per share (on January 26, 2015), and has closed as low as $8.01 per share since that time.  What is more, since the announcement of the Proposed Transaction, the per share price of Huntington common stock has traded as low as $7.83 per share, which not only constituted a new 52-week low for Huntington, but which would also imply a value of just $18.47 per FirstMerit share under the terms of the Merger Agreement. This Merger Consideration, and the variability of its implied value resulting from the Board's failure to negotiate a collar, simply does not adequately value stockholders' equity interest in the Company.

59.    Nor does it adequately account for FirstMerit's recent outperformance over its peers and the viability of its standalone alternative to the Proposed Transaction.  In short, the

Company is well-positioned amongst its peers in the industry for sustainable growth and pursuit of a standalone alternative would have resulted in higher per share value than that to be paid to FirstMerit shareholders in the Proposed Transaction.  For example, according to *Capital Cube*, "[FirstMerit]'s share price performance of 3.59% over the last 12 months is above peer median [(which peers included Huntington)] of -10.35%."  Moreover, "[t]he 30-day trend in its share price performance of -4.36% is also above the peer median of -14.30% suggesting that [FirstMerit] is a ***leading performer*** relative to its peers."

60.    What is more, Moody's Investor Services noted the upside of the deal to Huntington – and, conversely, the downside of the deal to FirstMerit.  Specifically, according to Moody's, Huntington has a "weaker credit profile" than FirstMerit, such that, because "Huntington is almost three times the size of FirstMerit . . . the creditworthiness of the combined company will be skewed to the lower-rated Huntington."  Conversely, "[c]ompared with Huntington, FirstMerit has better asset quality, capital and liquidity, reflecting a history of conservative management and loan underwriting."

61.    In short, the value of FirstMerit on a standalone basis is higher than the value offered by the Merger Consideration.

**D.    The Proposed Transaction Is the Result of a Flawed Process that Is Marred by Conflicts of Interest**

62.    The Proposed Transaction is the result of a flawed and conflicted process. Specifically, certain members of the Board and executive management will receive lucrative payments and other benefits in connection with the consummation of the Proposed Transaction that common stockholders will not.

63.    For example, many of the Individual Defendants hold otherwise illiquid blocks of FirstMerit stock that will become liquid through the Proposed Transaction.  What is more, in

connection with the consummation of the Proposed Transaction, certain outstanding options to purchase FirstMerit stock will be cancelled and cashed out for the Merger Consideration, while other options will be converted into options to acquire Huntington stock.  More important, though, certain outstanding FirstMerit equity awards that are subject to vesting, repurchase, or other lapse restriction granted under a FirstMerit stock plan will, if granted prior to the date of the Merger Agreement, fully vest and be cashed out for the Merger Consideration.  If granted on or after the date of the Merger Agreement, such equity awards will be assumed and converted into a restricted stock award of shares of Huntington common stock.  Similarly, certain outstanding FirstMerit restricted stock unit awards granted under a FirstMerit stock plan will, again if granted prior to the date of the Merger Agreement, fully vest (with any performance conditions deemed satisfied at maximum achievement) and be cashed out for the Merger Consideration, while any such awards granted after the date of the Merger Agreement will again be assumed and converted into a restricted stock unit award in respect of Huntington common stock. Notably, this accelerated vesting will occur apparently despite the fact that FirstMerit stockholders approved a stockholder proposal (that the Board opposed) in April 2015 to stop the acceleration of vesting of equity awards upon a change-in-control like this.

64.     What is more, in connection with the consummation of the Proposed Transaction, four current members of the Board, as "selected by Huntington in consultation with FirstMerit," will be appointed to the Huntington Board. These directors will likely earn higher fees for serving on the Huntington board of directors than they did serving on the FirstMerit Board, in addition to being able to liquidate their existing equity in FirstMerit.  And those directors who do not join the Hunting board will be invited to serve as members of Huntington's existing Great Akron-Canton Region Advisory Board for three years.

65.     For his part, while Defendant Greig will retire as CEO upon completion of the Proposed Transaction, he will remain a paid consultant for the combined company.  This is despite the fact that he stands to make as much as *$31.7 million* (according to the Company's March 2015 Proxy Statement, which was before the aforementioned April 2015 stockholder vote) in windfall payments should the Proposed Transaction be consummated:

**For Paul G. Greig, Chairman, President and Chief Executive Officer**

| Compensation Component | Voluntary Termination Without Good Reason (1) | Retirement (10) | Involuntary for Cause (1) | Involuntary Without Cause or Voluntary for Good Reason (1) | Disability (2) | Death (3) | Displacement + Involuntary Without Cause or Voluntary for Good Reason (4) | CIC + Involuntary for Cause (5) | CIC + Voluntary Without Good Reason (6) | CIC+ Involun-tary Without Cause or Voluntary for Good Reason (7) |
|---|---|---|---|---|---|---|---|---|---|---|
| Pension Plan | $ 16,747 | $ 16,747 | $ 16,747 | $ 16,747 | $ 16,747 | $ 8,374 | $ 16,747 | $ 16,747 | $ 16,747 | $ 16,747 |
| 2008 Excess Plan | $ 342,157 | $ 342,157 | — | $ 342,157 | $ 342,157 | $ 342,157 | $ 342,157 | — | $ 342,157 | $ 342,157 |
| Excess Plan | $ 32,733 | $ 32,733 | $ 32,733 | $ 32,733 | $ 32,733 | $ 16,367 | $ 32,733 | $ 32,733 | $ 32,733 | $ 32,733 |
| SERP | $ 20,486,888 | $ 20,486,888 | — | $ 20,486,888 | $ 20,486,888 | $ 20,486,888 | $ 20,486,888 | — | $ 20,486,888 | $ 20,486,888 |
| Life Insurance (8) | $ 222,822 | $ 222,822 | $ 222,822 | $ 222,822 | $ 222,822 | $ 1,500,000 | $ 222,822 | $ 222,822 | $ 222,822 | $ 222,822 |
| Cash Severance (Base Salary) | — | — | — | $ 3,102,000 | — | — | $ 3,102,000 | — | — | $ 3,102,000 |
| Cash Severance (Bonus) | — | — | — | $ 3,102,000 | — | — | $ 3,102,000 | — | — | $ 3,102,000 |
| Restricted Stock/RSU Value | — | — | — | $ 782,669 | $ 782,669 | $ 782,669 | $ 782,669 | — | $ 782,669 | $ 782,669 |
| Performance-Based RSUs | — | — | — | $ 3,467,725 | $ 3,467,725 | $ 3,467,725 | $ 3,467,725 | — | $ 3,467,725 | $ 3,467,725 |
| Health and Welfare Benefits | — | — | — | $ 144,784 | — | — | $ 144,784 | — | — | $ 144,784 |
| Outplacement | — | — | — | — | — | — | $ 35,000 | — | — | $ 35,000 |
| Excise Tax Forfeiture(9) | — | — | — | — | — | — | — | — | — | — |
| Total Value | $ 21,101,347 | $ 21,101,347 | $ 272,302 | $ 31,700,525 | $ 25,351,741 | $ 26,604,180 | $ 31,735,525 | $ 272,302 | $ 25,351,741 | $ 31,735,525 |

Notably, and troublingly, in connection with the announcement of the Merger Agreement, Defendant Greig seemed to place his own interests ahead of those of FirstMerit's stockholders, having been quoted as stating that: "**It is absolutely in human nature to have concerns and misgivings and thoughts that are probably thinking more of the first letters in merger, me.** From a personal perspective, I am comfortable with out future. I hope you're going to be as comfortable today as I am today as you absorb this change and see the management team."

66.     Finally, Sandler, the Board's financial advisor in connection with the Proposed Transaction, is conflicted through its prior business relationship with Huntington. In 2012 and 2013, Sandler served as Huntington's financial advisor in connection with its purchases of

Fidelity Bank and Camco Financial Corporation. Accordingly, Sandler has a clear interest in favoring its repeat client, Huntington, and was motivated to favor both its own interests and, by extension, those of Huntington, over those of FirstMerit and its shareholders.

67.     Such improper motivations can perhaps explain why, despite having set a standalone price target for FirstMerit of $21.00 per share (without a control premium) just months before the Proposed Transaction, Sandler nonetheless recommended that FirstMerit enter into a Merger Agreement pursuant to which FirstMerit shareholders would receive only $20.14 per share based on the closing price of Huntington common stock on the day before the Merger Agreement was announced – and even less after it was announced.

**E.     The Merger Agreement Contains Onerous Deal Protection Devices**

68.     The Proposed Transaction is also unfair because, as part of the Merger Agreement, the Board agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no successful competing offers will emerge for the Company.

69.     Despite the unfair price, the Merger Agreement has a number of provisions that make it more difficult for another buyer to purchase the Company, and for the Company to seek out competing offers.  Specifically, if the Company terminates the Proposed Transaction, the Merger Agreement states that the Company must pay Huntington a $100,600,000 termination fee.

70.     Additionally, the Merger Agreement contains a strict no-solicitation provision, pursuant to which the Company is prohibited from soliciting competing acquisition proposals or, subject to certain exceptions regarding unsolicited proposals, engaging in discussions or providing information in connection with an alternative acquisition proposal.

71.     The Merger Agreement also contains an information rights provision that requires the Company to notify Huntington of certain unsolicited competing offers and provide Huntington with information regarding such offers.

72.     Finally, the Merger Agreement further contains a "no-waiver" provision, which requires the Board to enforce any existing confidentiality or standstill agreements, and a "force-the-vote" provision, which requires the Board to call a meeting of its stockholders to adopt the Merger Agreement, even if the Board changes its recommendation in support thereof.

73.     These provisions will cumulatively discourage other potential bidders from making a competing bid for the Company.  Similarly, these provisions and agreements make it more difficult for the Company and individual stockholders to exercise their rights and to obtain a fair value for the Company's shares.

## COUNT I

### (Against the Individual Defendants for Breach of Fiduciary Duties)

74.     Plaintiff repeats and realleges each allegation set forth herein.

75.     The Individual Defendants have violated fiduciary duties owed to the public shareholders of FirstMerit and have placed their own personal interests ahead of those of FirstMerit's public stockholders.

76.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants are knowingly or recklessly and in bad faith attempting to unfairly deprive Plaintiffs and other members of the Class of the true value of their investment in FirstMerit.

77.     The Individual Defendants knowingly or recklessly and in bad faith violated their fiduciary duties by entering into the Proposed Transaction without regard to the fairness of the transaction to FirstMerit's shareholders and by failing to disclose all material information

concerning the Proposed Transaction to such shareholders.

78.     As alleged herein, the Individual Defendants have initiated a process to sell FirstMerit that undervalues the inherent, standalone value of the Company. In addition, by agreeing to the Proposed Transaction, the Individual Defendants have capped the value of FirstMerit stock at a price that does not adequately reflect the Company's true inherent, standalone value. Furthermore, any alternate acquirer will be faced with engaging in discussions with a management team and Board that is committed to the Proposed Transaction and face insurmountable deal protection devices.

79.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward Plaintiffs and the other members of the Class, and knowingly or recklessly have breached and are continuing to breach their fiduciary duties to the members of the Class.

80.     As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive the true, inherent value of their equity interest in FirstMerit.  Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

81.     Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury, which the Individual Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants Derivatively
### for Breach of Fiduciary Duties)

82.     Plaintiff repeats and realleges each allegation set forth herein.

83.     The Individual Defendants have violated fiduciary duties owed to the Company and have placed their own personal interests ahead of those of FirstMerit.

84.     The Individual Defendants knowingly or recklessly and in bad faith violated their fiduciary duties by entering into the Proposed Transaction without regard to the fairness of the transaction to FirstMerit.

85.     As alleged herein, the Individual Defendants have initiated a process to sell FirstMerit that undervalues the inherent, standalone value of the Company. In addition, by agreeing to the Proposed Transaction, the Individual Defendants have capped the price of FirstMerit stock at a price that does not adequately reflect the Company's true inherent, standalone value. Furthermore, any alternate acquirer will be faced with engaging in discussions with a management team and Board that is committed to the Proposed Transaction and face insurmountable deal protection devices.

86.     The Individual Defendants are engaging in self-dealing, are not acting in good faith, and knowingly or recklessly have breached and are continuing to breach their fiduciary duties to the Company.

87.     As a result of the actions of Defendants, the Company will suffer irreparable injury.  Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to the Company, all to the irreparable harm of the Company.

88.     The Company has no adequate remedy at law. Only through the exercise of this Court's equitable powers can the Company be fully protected from immediate and irreparable injury, which the Individual Defendants' actions threaten to inflict.

## COUNT III

### (Against Defendants Huntington and Merger Sub for Aiding & Abetting)

89.     Plaintiff repeats and realleges each allegation set forth herein.

90.     Huntington and Merger Sub have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to FirstMerit and the public shareholders of FirstMerit, and have participated in such breaches of fiduciary duties.

91.     Huntington and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, they rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

92.     Plaintiff and the members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand relief in their favor and in favor of the Class and FirstMerit, and against defendants as follows:

A.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as a Class representative for the First and Third Causes of Action;

B.     Declaring that this action is properly maintainable as a derivative action and declaring Plaintiff as an adequate representative of the Company for the Second Cause of Action;

C.     Declaring and decreeing that the Merger Agreement was entered into in breach of fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.     Directing the Individual Defendants to comply with their fiduciary duties;

E.     Enjoining the Proposed Transaction, unless and until the Company adopts and

implements a procedure or process to obtain a merger agreement providing the best available terms for stockholders;

F.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof;

G.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

H.      Granting such other and further equitable relief as this Court may deem just and proper.

Dated: February 26, 2016                          Respectfully submitted,

                                                  PERANTINIDES & NOLAN CO., L.P.A.

                                                  /s/ Chris T. Nolan
                                                  CHRIS T. NOLAN (0006617)
                                                  Attorney for Plaintiff
                                                  300 Courtyard Square
                                                  80 South Summit Street
                                                  Akron, OH  44308-1736
                                                  (330) 253-5454
                                                  (330) 253-6524 Fax
                                                  Email: cnolan@perantinides.com

*Of Counsel:*

**KAHN SWICK & FOTI, LLC**
Michael J. Palestina
Christopher R. Tillotson
206 Covington Street
Madisonville, LA 70447
(504) 455-1400
(504) 455-1498
Email:  Michael.Palestina@ksfcounsel.com
          Christopher.Tillotson@ksfcounsel.com

*Counsel for Plaintiffs*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all the issues of the within cause of action.

/s/ Chris T. Nolan
CHRIS T. NOLAN (0006617)