# Exhibit 6

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTMERIT CORPORATION SHAREHOLDER LITIGATION | Lead Case No:  5:16-cv-00461 |
| | MASTER FILE |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement, along with the Exhibits attached hereto (the "Stipulation"), is made and entered into by and among the Parties[1] to the above-captioned litigation, by and through their respective counsel (the "Settlement").  This Stipulation is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Settled Claims, upon the terms and subject to the conditions set forth herein.

## I.    THE LITIGATION

On January 26, 2016, FirstMerit and Huntington announced that their respective boards of directors had approved a definitive agreement under which Huntington would acquire FirstMerit.  Under the terms of the Merger, FirstMerit shareholders were entitled to receive 1.72 shares of Huntington stock and $5.00 in cash for each FirstMerit share they held.

On February 26, 2016, Mary H. Wojno ("Wojno"), in her capacity as the Trustee of the Mary H. Wojno Revocable Trust, filed a putative class action and derivative complaint in the Northern District of Ohio captioned *Wojno* v. *FirstMerit et. al.*, 16-cv-00461 (N.D. Ohio),

---

[1]    Unless otherwise indicated, all defined terms used in this Stipulation shall have the meanings set forth in Section IV.1 below.

alleging that Defendants breached their fiduciary duties and/or aided and abetted breaches of fiduciary duties in connection with entering into the Merger.

On March 4, 2016, Huntington made its initial filing of a Registration Statement on Form S-4 with the United States Securities and Exchange Commission ("SEC"), which included the preliminary joint proxy statement/prospectus of Huntington and FirstMerit and which was amended from time to time.

On March 23, 2016, Jack Wilkinson ("Wilkinson") filed a putative class and derivative complaint in the Northern District of Ohio captioned *Wilkinson* v. *FirstMerit et. al*, 16-cv-00723 (N.D. Ohio), alleging that Defendants breached their fiduciary duties and/or aided and abetted breaches of fiduciary duties in connection with entering into the Merger and violated Section 14(a) and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") by allegedly disseminating a preliminary proxy statement that was materially misleading.

On March 28, 2016, Michael Hafner ("Hafner") filed a putative class and derivative complaint in the Northern District of Ohio captioned *Hafner* v. *Greig et. al*, 16-cv-00762 (N.D. Ohio), alleging that Defendants breached their fiduciary duties and/or aided and abetted breaches of fiduciary duties in connection with entering into the Merger and violated Section 14(a) and Section 20(a) of the Exchange Act by allegedly disseminating a preliminary proxy statement that was materially misleading.

On April 4, 2016, Wojno filed an amended class action and derivative complaint in the Northern District of Ohio, which included disclosure-based claims under Section 14(a) and Section 20(a) of the Exchange Act.

On April 7, 2016, Wojno and Wilkinson made a motion for limited expedited discovery, which was opposed by Defendants on April 21.

On April 29, 2016, Huntington and FirstMerit each filed the Joint Proxy with the SEC, which they assert was mailed to the respective company's stockholders.

On May 6, 2016, the Court denied Wojno's and Wilkinson's motion for expedited discovery finding that discovery was stayed pursuant to the Private Securities Litigation Reform Act of 1995 pending a decision on Defendants' forthcoming motion to dismiss.

On May 9, 2016, the Court entered proposed orders consolidating the *Wojno*, *Wilkinson*, and *Hafner* actions, designating the March 23, 2016 complaint filed in the Wilkinson action as the operative complaint, and establishing an organizational structure designating interim lead plaintiffs and interim co-lead counsel.

On May 18, 2016, Plaintiffs filed a motion for preliminary injunction seeking to enjoin the FirstMerit shareholder vote scheduled for June 13, 2016 until such time as Defendants supplemented the Joint Proxy as specified in the memorandum accompanying Plaintiffs' motion.

On May 20, 2016, Defendants filed a motion to dismiss the operative complaint, and on May 27, 2016, Defendants filed an opposition to Plaintiffs' motion for preliminary injunction.

Between May 16, 2016 and June 6, 2016, Defendants' Counsel and Plaintiffs' Counsel conducted negotiations regarding a potential settlement of the Action. On June 6, 2016, the Parties reached an agreement in principle, set forth in a Memorandum of Understanding ("MOU"), providing for settlement of the Action by and among the Parties, on behalf of themselves and the putative Class on behalf of whom Plaintiffs brought the Action.

Pursuant to the MOU, as a result of the pendency and prosecution of the Action and extensive arm's-length negotiations, Defendants agreed that, *inter alia*, FirstMerit would file with the SEC a Current Report on Form 8-K (the "Form 8-K") containing certain agreed-upon supplemental disclosures concerning the Merger (the "Supplemental Disclosures"). On June 7,

2016, FirstMerit filed with the SEC a Form 8-K that included, *inter alia*, the Supplemental Disclosures.

On June 13, 2016, the shareholders of FirstMerit and Huntington, respectively, voted in favor of the Merger.  FirstMerit shareholders approved the Merger by an affirmative vote of approximately 98% of votes cast.  Huntington shareholders approved the issuance of Huntington common stock in connection with the Merger by an affirmative vote of approximately 99% of votes cast.  On August 16, 2016, the Merger closed.

Following shareholder approval of the Merger, pursuant to the terms of the MOU, Defendants provided Plaintiffs' Counsel with confirmatory discovery to allow Plaintiffs to confirm the fairness, reasonableness and adequacy of the proposed Settlement (the "Confirmatory Discovery").  During August 2016, Defendants produced to Plaintiffs' Counsel more than 11,500 pages of confidential documents as part of Confirmatory Discovery, including contemporaneous process-related emails and financial materials both from FirstMerit and its financial advisors.

As part of Confirmatory Discovery, Plaintiffs' Counsel also conducted depositions of FirstMerit personnel and a representative of Sandler O'Neill, FirstMerit's financial advisor.  On August 31, 2016, Plaintiffs' Counsel deposed William Burgess, a Principal in Sandler O'Neill's Investment Banking Group who served as the primary advisor to FirstMerit in connection with the Merger.  On September 2, 2016, Plaintiffs' Counsel deposed Paul Greig, FirstMerit's Chairman, Chief Executive Officer, and President.  On September 6, 2016, Plaintiffs' Counsel deposed John Blickle, FirstMerit's lead director and the non-executive director most involved in the sales process.

Following a careful and thorough review of the documents produced by Defendants, the Company's recent public filings, the information learned through depositions, and in consultation with their expert, Plaintiffs' Counsel determined that the terms of the proposed Settlement are fair, reasonable, and adequate, and in the best interests of the members of the Class.

Accordingly, and pursuant to the terms of the MOU, the Parties determined to enter into this Stipulation, which sets forth the terms and conditions of the Settlement.  The Settlement set forth herein reflects the results of the Parties' negotiations and the material terms of the MOU. The Settlement was reached after arm's-length negotiations between the Parties, who were all represented by counsel with extensive experience and expertise in shareholder class action litigation.  During the negotiations, all Parties had a clear view of the strengths and weaknesses of their respective claims and defenses.

Furthermore, at no time prior to the completion of Confirmatory Discovery and Plaintiffs' Counsels' determination that such discovery further confirmed the fairness, adequacy, and reasonableness of the proposed Settlement were there any discussions or agreements between the Parties regarding attorneys' fees or expenses to be paid to Plaintiffs' Counsel for the benefit they believe they have conferred to FirstMerit stockholders from this Settlement.

II.     **PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT**

Plaintiffs' entry into this Stipulation is not an admission or concession as to the lack of merit of any claims in the Action.  Plaintiffs and Plaintiffs' Counsel believe that they brought their claims in good faith and that the claims asserted in the Action have merit.  Plaintiffs and Plaintiffs' Counsel also believe that the Settlement addresses a substantial majority of the claims asserted in the Action.

Plaintiffs' Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals.  Plaintiffs' Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation.  Plaintiffs' Counsel are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the Action.  Plaintiffs' Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class.  Based on their evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement set forth in this Stipulation is fair, reasonable, and adequate, and in the best interests of the Class.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and every claim and contention alleged by the Plaintiffs in the Action.  Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them as alleged in the complaints in the Action, and specifically deny that the proxy materials provided to FirstMerit and Huntington shareholders were incomplete or in any way misleading or that any additional disclosure was required under the SEC rules or any applicable legal principle.  Further, Defendants have denied and continue to deny that they have committed, threatened to commit, or aided and abetted in the commission of any wrongdoing, violation of law, or breach of duty in connection with the Settled Claims and the subject matter thereof, including with respect to the proxy materials and the disclosures to FirstMerit and Huntington shareholders contained therein.

Nevertheless, Defendants are entering into the Settlement to eliminate the distraction, burden and expense of further litigation.  Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases similar to the Action.

Defendants have, therefore, determined that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.  Without admitting any wrongdoing, Defendants acknowledge that the filing and prosecution of the Action and discussions with Plaintiffs' Counsel were the sole factor in the decision to make the Supplemental Disclosures.

## IV.  TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs (individually and on behalf of the Class) and Defendants, by and through their attorneys of record, subject to the approval of the Court, that the Action and the Settled Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to all Parties, upon and subject to the terms and conditions of the Stipulation as follows:

### 1.    Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Action" means the consolidated class action lawsuit currently pending in the United States District Court for the Northern District of Ohio, captioned *In re FirstMerit Shareholder Litigation*, Lead Case No. 5:16-cv-00461.

1.2    "Class" means a non-opt-out class that includes any and all record holders and beneficial holders of FirstMerit stock who held or owned such stock at any time during the period beginning on and including January 26, 2016 through and including August 16, 2016 (the closing date of the Merger) (the "Class Period"), including any and all of their respective predecessors-in-interest, predecessors, successors-in-interest, successors, trustees, executors, administrators, estates, heirs, assigns, and transferees, immediate and remote, and any Person or

entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns. Excluded from the Class are Defendants, members of their immediate families, and any Person, firm, trust, corporation or other entity related to, controlled by, or affiliated with, any Defendants, and the legal representatives, heirs, successors, and assigns of such excluded Persons.

1.3     "Class Member," "Member of the Class" or "Member" means a Person who falls within the definition of the Class.

1.4     "Court" means the United States District Court for the Northern District of Ohio.

1.5     "Defendants" means the Individual Defendants, FirstMerit, Huntington, and West.

1.6     "Defendants' Counsel" means McDermott Will & Emery LLP, Baker & Hostetler LLP, Wachtell Lipton Rosen & Katz, Porter Wright Morris & Arthur LLP, and any partners, principals, associates or employees of these firms.

1.7     "Effective Date" means the first date by which all of the events and conditions specified in Paragraph 4.1 hereof have been met and have occurred.

1.8     "Final" means when the last of the following with respect to the Judgment approving this Stipulation, in all material respects in the form attached hereto as Exhibit C, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if such motion to alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal,

or otherwise, and in such a manner as to permit the consummation of the Settlement in all material respects in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement.

1.9    "FirstMerit" means FirstMerit Corporation.

1.10    "Huntington" means Huntington Bancshares, Incorporated.

1.11    "Individual Defendants" means Paul G. Grieg, John C. Blickle, Phillip A. Lloyd II, Terry L. Haines, R. Cary Blair, Karen S. Belden, Robert W. Briggs, Richard Colella, Gina D. France, J. Michael Hochschwender, Steven H. Baer, Russ M. Strobel, Lizabeth A. Ardisana, and Robert S. Cubbin.

1.12    "Joint Proxy" means the final Joint Proxy Statement and Prospectus filed by Huntington with the SEC on April 29, 2016 under Rule 424(b)(3), which was also filed by FirstMerit with the SEC on April 29, 2016 as Definitive Proxy Statement on Schedule 14A.

1.13    "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, in all material respects in the form attached hereto as Exhibit C.

1.14    "Merger" means the merger of FirstMerit into Huntington for 1.72 shares of Huntington stock and $5.00 in cash per FirstMerit share that was announced on January 26, 2016 and closed on August 16, 2016.

1.15    "Merger Agreement" means the Agreement and Plan of Merger dated January 25, 2016 between FirstMerit and Huntington for the Transaction.

1.16    "Notice" means the notice, in all material respects, in the form described in Paragraph 5.2 herein.

1.17    "Parties" means, collectively, (i) each of the Defendants, and (ii) the Plaintiffs on behalf of themselves and the Members of the Class.

1.18    "Person(s)" means an individual, corporation (including all divisions, affiliates, joint ventures, parents, and subsidiaries), limited partnership, limited liability company, partnership, professional corporation, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their present and former spouses, heirs, executors, estates, predecessors, successors, personal or legal representatives, directors, officers, agents, servants, employees, affiliates, insurers, reinsurers, underwriters, controlling shareholders, accountants, advisors, or assignees.

1.19    "Plaintiffs" means Mary H. Wojno, Jack Wilkinson, and Michael Hafner.

1.20    "Plaintiffs' Counsel" means Kahn Swick & Foti, LLC, Levi & Korsinsky LLP, Rigrodsky & Long, P.A. and any partners, principals, associates or employees of these firms.

1.21    "Releasing Persons" means Plaintiffs and each Member of the Class.

1.22    "Released Persons" means each of the Defendants, and each of their respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, funding sources, entities providing any fairness opinion, underwriters, brokers, dealers, lenders,

commercial bankers, attorneys, personal or legal representatives, accountants, insurers, coinsurers, reinsurers, and associates of each and all of the foregoing.

1.23    "Settled Claims" means any and all claims (including Unknown Claims) of any kind whatsoever that any or all of the Releasing Persons ever had or now have or could, can or might assert against any of the Released Persons which: (a) are based on his, her, or its ownership of FirstMerit common stock during the Class Period; (b) are based on any state's statute, common law or rule; any federal securities laws or rules concerning disclosure; or any "aiding and abetting" theories related thereto; and (c) arise out of or relate to, directly or indirectly, the conduct or omission by any Released Person in the process leading up to, the negotiation of, discussions concerning, and/or the terms of the Merger, or the Merger Agreement; the adequacy, accuracy, and completeness of any disclosures made by or on behalf of any Released Person relating to the Merger, including, but not limited to, the preliminary proxy, the Joint Proxy, and the Supplemental Disclosures; the allegations in any complaint or amended complaint filed in the Action; and/or the conduct or omission by any of the Released Persons in connection with the negotiation or execution of the Stipulation and the Settlement; provided, however, that the Settled Claims shall not include, (i) any claims under the federal or state securities laws alleging the existence of material inaccuracies in Huntington's financial statements (notwithstanding, Plaintiffs acknowledge that they presently have no basis to assert any inaccuracies in such financial statements), (ii) claims to enforce this Stipulation, or the Settlement, (iii) claims for appraisal under Section 1701.85 of the Ohio General Corporation Law or (iv) any claims that arise under the Hart-Scott-Rodino, Sherman, or Clayton Acts, or any other state or federal antitrust law.

1.1.    "Unknown Claims" means any claim, cause of action, damage or harm which any or all of the Releasing Persons do not know or suspect to exist at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its Settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this Settlement.  With respect to any and all Settled Claims, the Parties stipulate and agree that, upon the Effective Date, the Plaintiffs shall expressly, and each of the Releasing Persons shall be deemed to have, and by operation of the Judgment shall have, waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM  OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, each of the Releasing Persons shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or international or foreign law, which is similar, comparable or equivalent to California Civil Code §1542.  The Releasing Persons may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Settled Claims, but each Releasing Person, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Settled Claims and Unknown Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed or hereafter may exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent,

intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Parties acknowledge, and the Releasing Persons shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this release is a part.

1.24    "West" means West Subsidiary Corporation.

**2.    Settlement Consideration and Class Certification**

2.1    As a result of, among other things, negotiations between and among the Parties, it was agreed that, in consideration for the full settlement and release of all Settled Claims, FirstMerit included the Supplemental Disclosures in a Current Report on Form 8-K filed with the SEC on June 7, 2016, a copy of which is attached hereto as Exhibit A, as mutually agreed pursuant to the MOU in form, content, manner, method and timeliness satisfactory to Plaintiffs' Counsel in all respects.

2.2    Defendants acknowledge that the pendency and prosecution of the Action and the negotiations between Plaintiffs' Counsel and Defendants' Counsel were the sole factor in the decision to make the Supplemental Disclosures.

2.3    The Parties agree, for purposes of this Settlement only, to the certification of the non-opt-out Class pursuant to Rule 23(a), (b)(1) and (b)(2) of the Federal Rules of Civil Procedure.  The certification of the Class shall be binding with respect to the Settlement of the Action and this Stipulation only if the Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

3.     **Releases and Covenants**

3.1.     Upon the Effective Date, each and all of the Releasing Persons, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Settled Claims (including Unknown Claims) against the Released Persons and shall have covenanted not to sue the Released Persons with respect to any or all such Settled Claims.

3.2.     Upon the Effective Date, Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged, Plaintiffs, each and all of the Class Members, and Plaintiffs' Counsel from all claims (including Unknown Claims), based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Action or the Settled Claims, except to enforce the releases, waivers, covenants-not-to-sue, or other terms and conditions contained in this Stipulation.

4.     **Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

4.1     The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, as required by Paragraph 5.1, below;

(b)     the Court has entered the Judgment, in all material respects in the form attached hereto as Exhibit C;

(c)     the Judgment has become Final; and

(d)     the Action has been dismissed with prejudice without the award of any damages, costs, fees, or the grant of any further relief except for the award of fees and expenses pursuant to Paragraph 6.1 of this Stipulation; provided, however, that failure by the Court to

award the full amount of fees and expenses requested shall in no way affect the validity or finality of the Settlement or the occurrence of the Effective Date.

4.2.    If all of the conditions specified in Paragraph 4.1 above are not satisfied, then the Stipulation shall be canceled and terminated subject to Paragraph 4.3 below, unless Plaintiffs' Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

4.3.    In the event that the Settlement is not approved by the Court, or the Settlement is otherwise terminated in accordance with the terms of this Stipulation, the Parties shall be restored to their respective positions in the Action as of the time immediately prior to the date of the execution of the MOU, except that nothing herein shall be construed to require rescission of the Merger, in whole or in any part.  In such event, the other terms and provisions of the Stipulation (including the recitals set forth above), except for Plaintiffs' Counsels' joint and several obligations to make refunds or repayments, plus accrued interest, to the Company or its successor-in-interest as set forth in Paragraph 6.1, shall have no further force or effect with respect to the Parties and neither this Stipulation nor the MOU, the contents of either document or any negotiations, statements or proceedings in connection therewith, or any documents or statements made in connection with Confirmatory Discovery, shall be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court prior to the date of such event in accordance with the terms of the Stipulation shall be treated as vacated by an order entered *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order concerning the amount of attorneys' fees and expenses awarded to Plaintiffs' Counsel up to the requested amount shall constitute grounds for cancellation or termination of the Stipulation or affect its terms including the releases, or affect or delay the finality of the Judgment approving the Stipulation.

### 5.    Preliminary Approval Order, Notice, and Settlement Hearing

5.1.    As soon as practicable upon execution of this Stipulation, Plaintiffs' Counsel shall submit the Stipulation together with its Exhibits to the Court and shall move the Court for entry of an order (the "Preliminary Approval Order"), in all material respects in the form attached hereto as Exhibit B:

(a)    preliminarily certifying the Class, for purposes of this Settlement only, pursuant to the Federal Rules of Civil Procedure;

(b)    preliminarily approving the Settlement as fair, reasonable, and adequate;

(c)    approving the publication and dissemination of notice of the Settlement to Members of the Class, in all material respects in the form attached hereto as Exhibit B-1;

(d)    staying, pending Final Court approval of the Settlement, the Action, other than proceedings as are necessary to effectuate the terms of the Settlement and barring and enjoining any and all Releasing Persons from commencing, prosecuting, instigating, assisting or in any way participating in the commencement or prosecution of any action asserting any Settled Claims, directly, representatively, derivatively or in any other capacity, against any Released Person;

(e)    scheduling a hearing before the Court to:  (i) determine whether the preliminary certifications herein should be made final; (ii) determine whether the Settlement should be finally approved by the Court as fair, reasonable, adequate, and in the best interests of the Class; (iii) determine whether a final judgment should be entered in the Action pursuant to the Stipulation; (iv) consider the joint application of Plaintiffs and Plaintiffs' Counsel for an award of attorneys' fees and expenses; (v) hear and determine any objections to the Settlement or

the application of Plaintiffs' Counsel in the Action for an award of attorneys' fees and expenses; and (vi) consider other matters that the Court deems appropriate (the "Settlement Hearing");

      (f)    providing that if the Settlement is disapproved or terminated, the Stipulation shall have no force or effect, except for Plaintiffs' Counsels' joint and several obligations to make refunds or payments, plus accrued interest, to FirstMerit or its successor(s) in interest as set forth in Paragraph 6.1, and all negotiations and statements made in connection therewith shall be without prejudice to any Person or entities' rights, and the Parties to the Action shall be restored to their respective positions existing prior to the execution of the MOU; and

      (g)    providing that neither the Stipulation nor the Settlement, or any orders or judgments entered in connection with the Stipulation or the Settlement, the MOU, the negotiations leading up to or in connection with the Stipulation, or the MOU or the Settlement nor any action taken pursuant to or to carry out the Stipulation or the Settlement, including any documents produced in Confirmatory Discovery, is, may be construed as, or may be used as evidence or an admission by or against Defendants or the other Released Persons of any fact, claim, assertion, matter, contention, fault, culpability, obligation, wrongdoing or liability whatsoever but that the Stipulation and its exhibits and any order entered in connection therewith may be filed in the Action or related litigation as evidence of the Settlement, or to enforce its terms or in any other or subsequent action against or by the Released Persons to support a defense of *res judicata*, collateral estoppel, release or other theory of claim or issue preclusion or similar defense.

    5.2.    Defendants' Counsel shall be responsible for disseminating notice of the Settlement to Class Members, in all material respects in the form attached hereto as Exhibit B-1.

To the extent necessary, FirstMerit, or its successor-in-interest, shall pay all reasonable costs and expenses incurred in disseminating the Notice to Class Members in accordance with the Preliminary Approval Order.

5.3.    Plaintiffs' Counsel shall request that, after the Notice is given, the Court hold a Settlement Hearing and approve the settlement of the Action as set forth herein and enter the Judgment,  in all material respects in the form attached hereto as Exhibit C:

(a)    finally certifying the Class, pursuant to the Federal Rules of Civil Procedure;

(b)    finally approving the Settlement as fair, reasonable, and adequate;

(c)    providing that, as of the Effective Date, each and all of the Releasing Persons (including Plaintiffs) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Settled Claims (including Unknown Claims) against the Released Persons and shall have covenanted not to sue or proceed with any actions against the Released Persons with respect to any or all such Settled Claims and are barred and enjoined from doing so;

(d)    providing that, upon the Effective Date, Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Plaintiffs, each and all of the Class Members and Plaintiffs' Counsel from all claims (including Unknown Claims), based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Action or the Settled Claims, except to enforce the releases, waivers, covenants-not-to sue, or other terms and conditions contained in this Stipulation;

(e)      providing that neither the Stipulation nor the Settlement, or any orders or judgments entered in connection with the Stipulation or the Settlement, the MOU, the negotiations leading up to or in connection with the Stipulation, or the MOU, or the Settlement, nor any action taken pursuant to or to carry out the Stipulation or the Settlement, is, may be construed as, or may be used as evidence or an admission by or against Defendants or the other Released Persons of any fact, claim, assertion, matter, contention, fault, culpability, obligation, wrongdoing or liability whatsoever, but the Stipulation and its exhibits and any order entered in connection therewith may be filed in this action or related litigation as evidence of the Settlement, or to enforce its terms or in any subsequent action against or by the Released Persons to support a defense of *res judicata*, collateral estoppel, release or other theory of claim or issue preclusion or similar defense;

(f)      providing that Plaintiffs' Counsel shall be jointly and severally obligated to return to FirstMerit or its successor in interest any excess amounts paid as attorneys' fees and costs plus accrued interest if, as a result of any appeal and/or further proceedings or remand, or successful collateral attack, the fee or cost award is lowered or reversed;

(g)      without affecting the finality of the Judgment in any way, retaining continuing jurisdiction over: (i) the implementation of this Settlement and the Action until the Judgment becomes Final and each and every act agreed to be performed by the Parties has been performed pursuant to this Stipulation; and (ii) all Parties to the Action for the purpose of enforcing and administering this Stipulation;

(h)      providing that if the Settlement does not become Final in accordance with the terms of this Stipulation, then the Judgment shall be rendered null and void and shall be

vacated  and, in such event, all orders entered in connection therewith shall be vacated and rendered null and void;

(i)     providing that an appeal of the portion of the Order which awards attorneys' fees or expenses up to the requested amount shall have no effect whatsoever on the finality of any other portion of the Judgment; and

(j)     dismissing the Action and all of the claims alleged therein on the merits with prejudice as to all Defendants as against Plaintiffs and all Releasing Persons, with no costs awarded to any Party except as provided in this Stipulation.

**6.     Attorneys' Fees and Expenses**

6.1     Plaintiffs and Plaintiffs' Counsel intend to petition the Court for an award of attorneys' fees and expenses in an amount not to exceed in the aggregate $315,000 (including costs, disbursements, and expert and consultant fees).  Defendants agree not to oppose the application for attorneys' fees and expenses as long as the application does not exceed in the aggregate $315,000.  Subject to the terms and conditions of this Settlement and any order of the Court, FirstMerit (or its insurers and/or successor(s) in interest) shall pay the attorneys' fees and expenses awarded by the Court to Plaintiffs' Counsel in an aggregate amount not exceeding $315,000, which shall be paid to Kahn Swick & Foti, LLC, as receiving agent for Plaintiffs' Counsel, within 10 days after the date on which the Judgment approving the Settlement and Stipulation,  in all material respects in the form attached hereto as Exhibit C, is granted by the Court, subject to Plaintiffs' Counsels' joint and several obligations to make refunds or repayments within 10 days, plus accrued interest, to FirstMerit or its successor(s) in interest if the Effective Date does not occur, the Judgment is reversed or modified on appeal, or the fee or cost award is lowered as a result of any appeal and/or further proceedings or remand, or

successful collateral attack. Failure by the Court to award fees and expenses to Plaintiffs' Counsel in the requested amount shall not invalidate or otherwise limit any of the other terms of the Settlement. Plaintiffs' Counsel shall be solely responsible for the distribution of Plaintiffs' attorneys' fees and expenses. The Released Persons shall have no responsibility or liability whatsoever for the allocation of the fees and expenses award among Plaintiffs' Counsel in the Action. The Released Persons shall also have no responsibility or liability whatsoever with respect to the allocation of the fees and expenses award with respect to any other Person, entity or firm who may assert some claim thereto. Except as expressly provided in this paragraph, none of the Defendants or their affiliates or successors in interest shall be liable for any other fees or expenses of Plaintiffs or any Class Member or of any attorney, expert, advisor, agent or representative of the foregoing in connection with the Action.

**7.    Miscellaneous Provisions**

7.1     The Parties: (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate fully to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions.

7.2     The Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action. The Parties agree that the Settlement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.

7.3     The provisions contained in the Stipulation shall not be deemed a presumption, concession, or admission by any Defendant of any fault, liability, or wrongdoing as to any facts or claims that have been or might be alleged in the Action, or in any other action or proceeding.

7.4    Neither this Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Settled Claim, or of any wrongdoing or liability of the Defendants or any Released Person; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or any Released Person, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  The Released Persons may file this Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.5    All proceedings in the Action, except for those proceedings related to the Settlement, shall be stayed until the resolution of all such Settlement-related proceedings. Subject to the order of the Court, pending final determination of whether the Settlement provided for in the Stipulation should be approved, each and all of the Releasing Persons (including Plaintiffs), are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement, prosecution, or instigation of any action asserting any Settled Claims (including Unknown Claims), either directly, representatively, derivatively, or in any other capacity, against any Released Person.  If any Settled Claims (including Unknown Claims) are asserted against any Released Person in any court prior to Final Court approval of the Settlement, the Parties shall cooperate in obtaining the withdrawal or dismissal of such related litigation, including, where appropriate, joining in any motion to dismiss such litigation. Defendants shall have the right to withdraw from the Settlement in the event that any Settled

Claim is commenced or prosecuted against any of the Released Persons in any court before Final Court approval of the Settlement and (following a motion by any of the Parties) any such claim is not dismissed with prejudice or stayed in contemplation of dismissal with prejudice following Final Approval.

7.6     Each Party acknowledges that no promise, inducement, or agreement not expressed herein has been made to it, him, or her, that the Stipulation contains the entire agreement between the Parties concerning the matters described in the Stipulation, and, except as expressly provided herein, that there are no third-party beneficiaries to the Stipulation.

7.7     The Parties acknowledge and agree that (i) any breach of this Stipulation may result in immediate and irreparable injury for which there is no adequate remedy available at law; and (ii) in addition to any other remedies available, specific performance and injunctive relief are appropriate remedies to compel performance of this Stipulation.

7.8     Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by such other Party.  No waiver, express or implied, by any Party of any breach or default by any other party in the performance by the other party of its obligations under this Stipulation shall be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous under this Stipulation.

7.9     Should any part of the Stipulation be rendered or declared invalid by a court of competent jurisdiction, and except as expressly provided herein to the contrary, such invalidation

of such part or portion of the Stipulation should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

7.10    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by reference.

7.11    Plaintiffs represent and warrant that none of the claims or causes of action that are or could have been asserted in the Action have been assigned, encumbered, or in any manner transferred in whole or in part.

7.12    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto warrants that such Person has the full authority to do so.

7.13    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors in interest.

7.14    The Stipulation may be executed in counterparts by any of the signatories hereto, including by e-mail in PDF format, and as so executed shall constitute one agreement.

7.15    The Stipulation and Settlement contemplated by it shall be governed by and construed in accordance with the laws of the State of Ohio without regard to conflict of laws principles.  The Court shall have exclusive jurisdiction over any dispute arising out of or relating in any way to this Settlement Stipulation, and the Parties further waive any right to demand a jury trial as to any such dispute.

7.16    The Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Stipulation.

7.17    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

7.18    All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, as indicated below, by their duly authorized attorneys.

EXECUTED AND AGREED on September 28, 2016:

_____
MICHAEL J. PALESTINA
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA  70447

*Attorneys for Mary H. Wojno*

_____
SHANNON L. HOPKINS
LEVI & KORSINSKY LLP
733 Summer Street, Suite 304
Stamford, CT  06901

*Attorneys for Jack Wilkinson*

_____
LAZAR P. RAYNAL
WILLIAM P. SCHUMAN
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL  60606

*Attorneys for the Individual Defendants*

_____
STEPHEN R. DIPRIMA
BENJAMIN D. KLEIN
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019

*Attorneys for Huntington Bancshares, Inc.*

_____
BRIAN D. LONG
RIGRODSKY & LONG, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803

*Attorneys for Michael Hafner*

_____
ROBERT W. TRAFFORD
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street
Suite 2900
Columbus, Ohio  43215

*Attorneys for Huntington Bancshares, Inc.*

7.18    All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, as indicated below, by their duly authorized attorneys.

EXECUTED AND AGREED on September 28, 2016:


MICHAEL J. PALESTINA
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA  70447

*Attorneys for Mary H. Wojno*


SHANNON L. HOPKINS
LEVI & KORSINSKY LLP
733 Summer Street, Suite 304
Stamford, CT  06901

*Attorneys for Jack Wilkinson*


BRIAN D. LONG
RIGRODSKY & LONG, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803

*Attorneys for Michael Hafner*


LAZAR P. RAYNAL
WILLIAM P. SCHUMAN
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL  60606

*Attorneys for the Individual Defendants*


STEPHEN R. DIPRIMA
BENJAMIN D. KLEIN
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019

*Attorneys for Huntington Bancshares, Inc.*


ROBERT W. TRAFFORD
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street
Suite 2900
Columbus, Ohio  43215

*Attorneys for Huntington Bancshares, Inc.*


25

7.18    All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, as indicated below, by their duly authorized attorneys.

EXECUTED AND AGREED on September 28, 2016:


_____

MICHAEL J. PALESTINA
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA  70447

*Attorneys for Mary H. Wojno*


_____

LAZAR P. RAYNAL
WILLIAM P. SCHUMAN
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL  60606

*Attorneys for the Individual Defendants*


_____

SHANNON L. HOPKINS
LEVI & KORSINSKY LLP
733 Summer Street, Suite 304
Stamford, CT  06901

*Attorneys for Jack Wilkinson*


_____

STEPHEN R. DIPRIMA
BENJAMIN D. KLEIN
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019

*Attorneys for Huntington Bancshares, Inc.*


_____

BRIAN D. LONG
RIGRODSKY & LONG, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803

*Attorneys for Michael Hafner*


_____

ROBERT W. TRAFFORD
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street
Suite 2900
Columbus, Ohio  43215

*Attorneys for Huntington Bancshares, Inc.*

25

7.18   All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, as indicated below, by their duly authorized attorneys.

EXECUTED AND AGREED on September 28, 2016:


_____
MICHAEL J. PALESTINA
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA  70447

*Attorneys for Mary H. Wojno*


_____
SHANNON L. HOPKINS
LEVI & KORSINSKY LLP
733 Summer Street, Suite 304
Stamford, CT  06901

*Attorneys for Jack Wilkinson*


_____
BRIAN D. LONG
RIGRODSKY & LONG, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803

*Attorneys for Michael Hafner*


_____
LAZAR P. RAYNAL
WILLIAM P. SCHUMAN
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL  60606

*Attorneys for the Individual Defendants*


_____
STEPHEN R. DIPRIMA
BENJAMIN D. KLEIN
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019

*Attorneys for Huntington Bancshares, Inc.*


_____
ROBERT W. TRAFFORD
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street
Suite 2900
Columbus, Ohio  43215

*Attorneys for Huntington Bancshares, Inc.*

# EXHIBIT A

**EXHIBIT A**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

## FORM 8-K

---

**CURRENT REPORT**
**Pursuant to Section 13 or 15(d)**
**of The Securities Exchange Act of 1934**

**Date of Report (Date of earliest event reported): June 7, 2016**

---

# FirstMerit Corporation
(Exact name of registrant as specified in its charter)

---

| **Ohio** | **001-11267** | **34-1339938** |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| **III Cascade Plaza, 7th Floor Akron, Ohio** | **44308** |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

**Registrant's telephone number, including area code: (330) 996-6300**

**Not Applicable**
(Former name or former address, if changed since last report)

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☒  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 8.01. Other Events.**

On June 7, 2016, FirstMerit Corporation ("FirstMerit"), each of its directors and Huntington Bancshares Incorporated ("Huntington") reached an agreement in principle regarding the settlement of a putative consolidated class action captioned *In re FirstMerit Corp. S'holder Litig.*, Lead Case No. 5:16-cv-00461 (the "Actions"), pending before the United States District Court for the Northern District of Ohio (the "Court").

The Actions relate to the Agreement and Plan of Merger, dated as of January 25, 2016, by and among Huntington, FirstMerit and West Subsidiary Corporation. Under the terms of the agreement in principle, FirstMerit and Huntington agreed to make available additional information to the shareholders of FirstMerit and Huntington. The additional information is contained in the supplement (the "Supplement") to the Joint Proxy Statement/Prospectus of Huntington and FirstMerit, dated April 29, 2016 (the "Joint Proxy Statement") attached as Exhibit 99.1 hereto. The Supplement should be read in conjunction with the Joint Proxy Statement and the documents incorporated by reference therein.

FirstMerit, Huntington and the other defendants deny all of the allegations made by plaintiffs in the Actions and believe the disclosures in the Joint Proxy Statement are adequate under the law. Nevertheless, FirstMerit, Huntington and the other defendants have agreed to settle the Actions in order to avoid the costs, disruption, and distraction of further litigation.

**Item 9.01 Financial Statements and Exhibits.**

(d) Exhibits.

| Exhibit No. | Description |
| --- | --- |
| 99.1 | Supplement, dated June 7, 2016 to the Joint Proxy Statement/Prospectus of Huntington Bancshares Incorporated and FirstMerit Corporation, dated April 29, 2016. |

**Important Additional Information**

In connection with the proposed transaction, Huntington has filed with the SEC a registration statement on Form S-4 that includes a joint proxy statement of Huntington and FirstMerit and a prospectus of Huntington, as well as other relevant documents concerning the proposed transaction. The definitive Joint Proxy Statement/Prospectus has been declared effective by the SEC and mailed to stockholders of Huntington and FirstMerit. The proposed transaction involving Huntington and FirstMerit will be submitted to FirstMerit's stockholders and Huntington's stockholders for their consideration. This communication does not constitute an offer to sell or the solicitation of an offer to buy any securities or a solicitation of any vote or approval. Before making any voting or investment decision, investors and stockholders of Huntington and FirstMerit are urged to carefully read the entire Registration Statement and Joint Proxy Statement/Prospectus, as well as any amendments or supplements to these documents, because they will contain important information about the proposed transaction. A copy of the definitive joint proxy statement/prospectus, as well as other filings containing information about Huntington and FirstMerit, can be obtained, without charge, at the SEC's website (http://www.sec.gov). Copies of the joint proxy statement/prospectus and the filings with the SEC that are incorporated by reference in the joint proxy statement/prospectus can also be obtained, without charge, by directing a request to Huntington Investor Relations, Huntington Bancshares Incorporated, Huntington Center, HC0935, 41 South High Street, Columbus, Ohio 43287, (800) 576-5007 or to FirstMerit Corporation, Attention: Thomas P. O'Malley, III Cascade Plaza, Akron, Ohio 44308, (330) 384-7109.

**Participants in the Solicitation**

Huntington, FirstMerit, and certain of their respective directors, executive officers and employees may be deemed to be participants in the solicitation of proxies in respect of the proposed transaction. Information regarding Huntington's directors and executive officers is available in its definitive proxy statement, which was filed with the SEC on March 10, 2016, and certain of its Current Reports on Form 8-K. Information regarding FirstMerit's directors and executive officers is available in its most recent Annual Report on Form 10-K/A, which was filed with the SEC on April 25, 2016, and certain of its Current Reports on Form 8-K. Other information regarding the participants in the proxy solicitation and a description of their direct and indirect interests, by security holdings or otherwise, is available in the joint proxy statement/prospectus and other relevant materials filed with the SEC. Free copies of this document may be obtained as described in the preceding paragraph.

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**FirstMerit Corporation**
(Registrant)

| **June 7, 2016** | **/s/ CARLTON E. LANGER** |
| (Date) | Carlton E. Langer |
| | *Executive Vice President, Chief Legal Officer and* |
| | *Corporate Secretary* |

**EXHIBIT INDEX**

| Exhibit No. | Description |
| --- | --- |
| 99.1 | Supplement, dated June 7, 2016 to the Joint Proxy Statement/Prospectus of Huntington Bancshares Incorporated and FirstMerit Corporation, dated April 29, 2016. |

**Exhibit 99.1**

## SUPPLEMENT TO JOINT PROXY STATEMENT/PROSPECTUS

*FirstMerit Corporation ("FirstMerit") and Huntington Bancshares Incorporated ("Huntington") have made the following supplemental disclosures to the Joint Proxy Statement/Prospectus of FirstMerit and Huntington, dated April 29, 2016 (the "Joint Proxy Statement/Prospectus"), in connection with the proposed settlement of a putative consolidated class action captioned In re FirstMerit Corp. S'holder Litig., Lead Case No. 5:16-cv-00461 pending before the United States District Court for the Northern District of Ohio. FirstMerit, each of its directors and Huntington have reached an agreement in principle regarding the settlement of this lawsuit. Under the terms of the agreement in principle, FirstMerit and Huntington have agreed to provide the additional information set forth below. This supplemental information should be read in conjunction with the Joint Proxy Statement/Prospectus and the documents incorporated therein. Nothing in this filing shall be deemed an admission of the legal necessity or materiality of any of the disclosures set forth herein. To the extent that information herein differs from or updates information contained in the Joint Proxy Statement/Prospectus, the information contained herein supersedes the information contained in the Joint Proxy Statement/Prospectus. Defined terms used but not defined herein have the meanings set forth in the Joint Proxy Statement/Prospectus.*

*This supplement to the Joint Proxy Statement/Prospectus is dated June 7, 2016.*

## CAUTIONARY STATEMENT REGARDING FORWARD-LOOKING STATEMENTS

This communication may contain certain forward-looking statements, including certain plans, expectations, goals, projections, and statements about the benefits of the proposed transaction, the merger parties' plans, objectives, expectations and intentions, the expected timing of completion of the transaction, and other statements that are not historical facts. Such statements are subject to numerous assumptions, risks, and uncertainties. Statements that do not describe historical or current facts, including statements about beliefs and expectations, are forward-looking statements. Forward-looking statements may be identified by words such as expect, anticipate, believe, intend, estimate, plan, target, goal, or similar expressions, or future or conditional verbs such as will, may, might, should, would, could, or similar variations. The forward-looking statements are intended to be subject to the safe harbor provided by Section 27A of the Securities Act of 1933, Section 21E of the Securities Exchange Act of 1934, and the Private Securities Litigation Reform Act of 1995.

While there is no assurance that any list of risks and uncertainties or risk factors is complete, below are certain factors which could cause actual results to differ materially from those contained or implied in the forward-looking statements: changes in general economic, political, or industry conditions, uncertainty in U.S. fiscal and monetary policy, including the interest rate policies of the Federal Reserve Board, volatility and disruptions in global capital and credit markets; movements in interest rates; competitive pressures on product pricing and services; success, impact, and timing of Huntington's and FirstMerit's respective business strategies, including market acceptance of any new products or services implementing Huntington's "Fair Play" banking philosophy; the nature, extent, timing, and results of governmental actions, examinations, reviews, reforms, regulations, and interpretations, including those related to the Dodd-Frank Wall Street Reform and Consumer Protection Act and the Basel

III regulatory capital reforms, as well as those involving the OCC, Federal Reserve, FDIC, and CFPB, and the regulatory approval process associated with the merger; the possibility that the proposed transaction does not close when expected or at all because required regulatory, shareholder or other approvals are not received or other conditions to the closing are not satisfied on a timely basis or at all; the possibility that the anticipated benefits of the transaction are not realized when expected or at all, including as a result of the impact of, or problems arising from, the integration of the two companies or as a result of the strength of the economy and competitive factors in the areas where Huntington and FirstMerit do business; the possibility that the transaction may be more expensive to complete than anticipated, including as a result of unexpected factors or events; diversion of management's attention from ongoing business operations and opportunities; potential adverse reactions or changes to business or employee relationships, including those resulting from the announcement or completion of the transaction; Huntington's ability to complete the acquisition and integration of FirstMerit successfully; and other factors that may affect future results of Huntington and FirstMerit. Additional factors that could cause results to differ materially from those described above can be found in Huntington's Annual Report on Form 10-K for the year ended December 31, 2015 and in its subsequent Quarterly Reports on Form 10-Q, including for the quarter ended March 31, 2016, each of which is on file with the Securities and Exchange Commission (the "SEC") and available in the "Investor Relations" section of Huntington's website, http://www.huntington.com, under the heading "Publications and Filings" and in other documents Huntington files with the SEC, and in FirstMerit's Annual Report on Form 10-K/A for the year ended December 31, 2015 and in its subsequent Quarterly Reports on Form 10-Q, including for the quarter ended March 31, 2016, each of which is on file with the SEC and available in the "Investors" section of FirstMerit's website, http://www.firstmerit.com, under the heading "Publications & Filings" and in other documents FirstMerit files with the SEC.

All forward-looking statements speak only as of the date they are made and are based on information available at that time. Neither Huntington nor FirstMerit assumes any obligation to update forward-looking statements to reflect circumstances or events that occur after the date the forward-looking statements were made or to reflect the occurrence of unanticipated events except as required by federal securities laws. As forward-looking statements involve significant risks and uncertainties, caution should be exercised against placing undue reliance on such statements.

## SETTLEMENT OF LITIGATION

On June 7, 2016, FirstMerit, each of its directors and Huntington reached an agreement in principle regarding the settlement of a putative consolidated class action captioned *In re FirstMerit Corp. S'holder Litig., Lead Case No. 5:16-cv-00461* (the "Actions"), pending before the United States District Court for the Northern District of Ohio (the " Court").

The Actions relate to the Agreement and Plan of Merger, dated as of January 25, 2016, by and among Huntington, FirstMerit and West Subsidiary Corporation (the "Merger Agreement") providing for the merger of West Subsidiary Corporation with and into FirstMerit (the "Merger").

-2-

Under the terms of the agreement in principle, plaintiffs will release the defendants from all claims relating to the Merger, subject to approval of the Court. Plaintiffs' counsel also has reserved the right to seek an award of attorneys' fees and expenses. If the Court approves the settlement contemplated by the agreement in principle, the Actions will be dismissed with prejudice.

The settlement will not affect the merger consideration to be paid to FirstMerit's shareholders in connection with the Merger or the timing of the special meetings of FirstMerit's or Huntington's shareholders, each scheduled for June 13, 2016, to vote upon, among other things, proposals to approve the Merger Agreement.

FirstMerit, Huntington and the other defendants deny all of the allegations made by plaintiffs in the Actions and believe the disclosures in the Joint Proxy Statement are adequate under the law. Nevertheless, FirstMerit, Huntington and the other defendants have agreed to settle the Actions in order to avoid the costs, disruption, and distraction of further litigation.

## SUPPLEMENTAL DISCLOSURES

*The following disclosure amends and restates the first and second paragraphs on page 53 of the Joint Proxy Statement/Prospectus in the section captioned "Background of the Merger".*

In the fourth quarter of 2014 and the first quarter of 2015, FirstMerit management and representatives of Sandler O'Neill & Partners, L.P. (which we refer to as "Sandler") engaged in confidential preliminary exploratory discussions with representatives of three financial institutions (which did not include Huntington) regarding their potential interest in pursuing a business combination transaction with FirstMerit; however, none of such financial institutions was interested in pursuing a business combination with FirstMerit at that time or would only consider a transaction without a premium to FirstMerit's then current market price. Discussions with these parties did not proceed further and none of the parties entered into a non-disclosure agreement or received confidential information.

On May 1, 2015, Huntington's chief executive officer, Mr. Stephen Steinour, contacted FirstMerit's chief executive officer, Mr. Paul Greig, and provided a verbal initial indication of interest in a potential stock-for-stock business combination with FirstMerit, indicating Huntington's willingness to offer consideration of $24.00 per share of FirstMerit common stock based on Huntington's then-current share price, which represented a 24% premium over FirstMerit's share price of $19.37 on April 30, 2015. As chief executives of bank holding companies located in Ohio, Mr. Steinour and Mr. Greig knew each other professionally, but prior to Mr. Steinour's verbal indication of interest regarding such potential business combination, Mr. Steinour and Mr. Greig had not previously discussed a merger. Later that day and on May 2, 2015, Mr. Greig notified the other members of the Executive Committee of the FirstMerit board of directors (which consists of Mr. Greig, FirstMerit's lead director, Mr. John Blickle, and three additional members of the FirstMerit board of directors) of Huntington's interest.

-3-

*The following disclosure amends and restates the first three paragraphs on page 54 of the Joint Proxy Statement/Prospectus in the section captioned "Background of the Merger".*

On May 21, 2015, the FirstMerit board of directors held a special meeting to review and consider the May 15 proposal and Mr. Greig's and Mr. Steinour's subsequent conversations related thereto. Representatives of Sandler and Sullivan & Cromwell LLP, FirstMerit's outside counsel (which we refer to as "Sullivan & Cromwell"), were present at the meeting. At the meeting, representatives of Sandler updated the FirstMerit board of directors on matters similar to those previously discussed with the Executive Committee of the FirstMerit board of directors on May 8, 2015 and the FirstMerit board of directors on May 13, 2015. A representative of Sullivan & Cromwell then discussed the FirstMerit board of directors' fiduciary duties in general in connection with its evaluation of strategic alternatives, the regulatory requirements for approvals of bank acquisition transactions and the regulatory environment for banks in general and for bank acquisition transactions in particular. Among other things, the FirstMerit board of directors considered the matters discussed by Sullivan & Cromwell, the impact of a transaction on Akron and Canton, Ohio and on FirstMerit employees and the impact of the announcement of a transaction on Huntington's share price. At the conclusion of the meeting, the FirstMerit board of directors did not reach a consensus that the May 15 proposal was sufficiently compelling to move forward and engage in further discussions at that time. The FirstMerit board of directors instructed Mr. Greig to inform representatives of Huntington that FirstMerit was not prepared to proceed.

On September 15, 2015, Mr. Greig initiated a discussion with a senior executive of a non-U.S. financial institution to gauge interest in engaging in confidential preliminary exploratory discussions regarding a potential business combination with FirstMerit. This financial institution was not one of the institutions with which First Merit had exploratory discussions in late 2014 or early 2015. Following the initial discussion, the senior executive of such financial institution did not indicate an interest in pursuing such a potential business combination at that time, and FirstMerit did not proceed further with such financial institution.

At the request of Huntington, on September 17, 2015, Messrs. Greig and Blickle met with Mr. Steinour and Huntington's lead director, Mr. David Porteous, to discuss the possibility of Huntington submitting a revised proposal including an increase in consideration and commitments to FirstMerit employees and to the community. In particular, the parties discussed charitable contributions to foundations in the communities served by FirstMerit, the creation of an operations center in Akron and a commitment to maintain a specified number of jobs in Akron.

*The following disclosure amends and restates the third and fourth full paragraphs on page 55 of the Joint Proxy Statement/Prospectus in the section captioned "Background of the Merger".*

On November 18, 2015, the FirstMerit board of directors held a special meeting to review and consider the November 11 proposal. Representatives of Sandler and Sullivan & Cromwell were present at the meeting. At the meeting, the FirstMerit board of directors considered, among other things, the value of the consideration offered in the November 11 proposal and the impact on a transaction of the expected increase in interest rates by the Board of Governors of the Federal Reserve System and of the recently announced transaction between First Niagara Financial Group and KeyCorp. At the conclusion of the meeting, the FirstMerit board of directors did not reach a <u>consensus that the consideration was sufficient to move</u> forward with the November 11 proposal. <u>The FirstMerit board of directors</u> instructed Mr. Greig to inform Huntington that FirstMerit would not pursue a business combination transaction with Huntington on such terms. Mr. Greig did so later that day.

On November 27, 2015, Mr. Blickle and Mr. Porteous met to discuss the possibility of Huntington submitting a revised proposal <u>containing an increase in consideration and a cash component and commitments to FirstMerit employees and to the community</u>.

*The following disclosure amends and restates the paragraph spanning pages 55 and 56 of the Joint Proxy Statement/Prospectus in the section captioned "Background of the Merger".*

On December 9, 2015, the FirstMerit board of directors held its previously scheduled annual strategic planning meeting with FirstMerit senior management. While in executive session at the meeting, the FirstMerit board of directors reviewed and considered the December 2 proposal. Representatives of FirstMerit management, Sandler and Sullivan & Cromwell were also present at the meeting. At the conclusion of the meeting, the FirstMerit board of directors determined to allow Huntington to conduct further due diligence on FirstMerit in order to confirm the December 2 proposal, and authorized FirstMerit's management and advisors to begin performing reverse due diligence on Huntington and negotiating transaction documentation. In reaching this conclusion, the FirstMerit board of directors took into account Sandler's and management's updated views as to the presumptive financial performance of FirstMerit on a standalone basis in 2016, <u>the significant deterioration in U.S. equity markets, and in particular the trading prices of equity securities of financial institutions that occurred between November 18, 2015 and December 9, 2015 and the increased pressures on banks resulting therefrom</u>, the impact of the expected increase to interest rates by the Board of Governors of the Federal Reserve System and the improvements in the December 2 proposal from the November 11 proposal, including the increased exchange ratio, and that a portion of the consideration would be payable in cash (which the FirstMerit board of directors agreed should constitute the maximum 20% of consideration contemplated by the December 2 proposal in order to ensure that a portion of the value of the merger consideration would not be subject to potential downward fluctuations in the price of Huntington common stock once the per share cash amount was fixed), the increased representation of FirstMerit directors on the Huntington board of directors commensurate with FirstMerit shareholders' pro forma ownership of the combined company and the enhanced commitment with respect to FirstMerit's employees and communities.

*The following disclosure amends and restates the second full paragraph on page 56 of the Joint Proxy Statement/Prospectus in the section captioned "Background of the Merger".*

During the period between the December 9, 2015 meeting of the FirstMerit board of directors and the execution of the merger agreement, as the parties considered and negotiated the transaction and arrangements for FirstMerit personnel (including Mr. Greig's consulting agreement) and continued to perform due diligence on one another, U.S. equity markets experienced tremendous volatility. For example, from December 9, 2015 to January 25, 2016, the S&P 500 Bank Index declined by 17.4% and the share prices of Huntington and FirstMerit common stock declined by 20.4% and 18.1%, respectively.

*The following disclosure amends and restates the fourth paragraph on page 57 of the Joint Proxy Statement/Prospectus in the section captioned "Background of the Merger".*

On January 20, 2016, the FirstMerit board of directors held a special meeting to review and consider the final proposal. At the meeting, representatives of Sullivan & Cromwell and Jones Day reviewed with the FirstMerit board of directors its fiduciary duties in connection with a potential strategic business combination transaction and regulatory considerations and representatives of Sullivan & Cromwell reviewed the terms of the draft merger agreement. Representatives of Jones Day reviewed with the FirstMerit board of directors Sandler's prior relationships with Huntington, including the relationships described under the section entitled "Opinion of Sandler O'Neill & Partners, L.P.," the facts of which had previously been disclosed to FirstMerit by Sandler prior to Sandler's engagement. The FirstMerit board of directors discussed such prior relationships and related considerations, and determined that those relationships and considerations did not impair the ability of Sandler to continue to act as the financial advisor to FirstMerit. Representatives of Sandler discussed the recent market volatility, provided an overview of financial aspects of each of FirstMerit, Huntington and the combined company, and reviewed the results of FirstMerit's reverse due diligence and the financial terms of the potential transaction. Representatives of Sandler also discussed with the FirstMerit board of directors the environment for other strategic alternatives available to FirstMerit. In connection with that discussion, Sandler noted (i) the fact that FirstMerit management has engaged in preliminary exploratory discussions with potential acquirers from time to time, including speaking with three potential acquirers in the fourth quarter of 2014 and the first quarter of 2015, without any of the parties indicating a substantial interest in pursuing a transaction, (ii) Sandler's assessment that those parties would continue to be not interested in pursuing a strategic transaction with FirstMerit at such time, and (iii) Sandler's assessment that other third parties would not likely be interested in acquiring FirstMerit at such time. The FirstMerit board of directors also discussed the termination fee that could become payable if FirstMerit terminated the merger agreement in certain circumstances, the terms of the merger agreement prohibiting FirstMerit from soliciting, and providing Huntington with the ability to match, third party acquisition proposals as well as the unlikelihood that such terms would have a preclusive effect on a potentially interested third party from making a superior offer. The FirstMerit board of directors discussed such provisions with its legal and financial advisors and confirmed that such provisions were consistent with market practice in transactions of this nature. The FirstMerit board of directors also discussed the arrangements for FirstMerit personnel, including Mr. Greig's consulting agreement. After discussion of the foregoing matters, the proposed transaction, the status of discussions with Huntington and the risks inherent in a potential transaction, the FirstMerit board of directors authorized senior management, Sandler and Sullivan & Cromwell to continue negotiating the draft merger agreement with Huntington.

-6-

*The following disclosure is added immediately following footnote (4) on page 81 of the Joint Proxy Statement/Prospectus in the section captioned "Opinion of Sandler O'Neill & Partners, L.P.."*

The FirstMerit peer group consisted of all nationwide commercial banks trading on major exchanges with assets between $20.0 billion and $35.0 billion, excluding targets of announced merger transactions and companies with supervoting share structures. The FirstMerit peer group consisted of the following companies:

| | |
|---|---|
| Signature Bank | Commerce Bancshares, Inc. |
| East West Bancorp, Inc. | Umpqua Holdings Corporation |
| BOK Financial Corporation | BankUnited, Inc. |
| Cullen/Frost Bankers, Inc. | Wintrust Financial Corporation |
| Synovus Financial Corp. | Hancock Holding Company |
| Associated Banc-Corp | Prosperity Bancshares, Inc. |
| First Horizon National Corporation | TCF Financial Corporation |
| Webster Financial Corporation | |

The table below sets forth company-by-company pricing multiples and financial metrics examined. Regulatory data is used when GAAP data was unavailable. Sandler did not calculate per share value ranges for FirstMerit based on this analysis.

Financial Data as of or for the Period Ending September 30, 2015

Pricing Data as of January 21, 2016

| Company | City, State | Ticker | Total Assets ($mm) | Capital Position TCE/TA Ratio (%) | Leverage Ratio (%) | Total RBC Ratio (%) | LTM Profitability ROAA (%) | ROATCE (%) | Net Interest Margin (%) | Efficiency Ratio (%) | Asset Quality Gross Loans/Total Assets (%) | LLR/Loans (%) | NPAs[1]/Avg. Loans (%) | NCOs/Avg Loans (%) | Valuation Price/Book Value (%) | Price/Tang. Book Value (%) | Price/LTM EPS (x) | Price/Est. FY1 EPS (x) | Price/Est. FY2 EPS (x) | Current Dividend Yield (%) | LTM Dividend Ratio (%) | Market Value ($mm) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Signature Bank | New York, NY | SBNY | 33,451 | 8.65 | 8.87 | 12.10 | 1.23 | 13.8 | 3.26 | 33.7 | 65.9 | 0.60 | 0.62 | 0.08 | 245 | 245 | 19.1 | 16.8 | 14.4 | 0.0 | 0.0 | 7,217 |
| East West Bancorp, Inc. | Pasadena, CA | EWBC | 31,120 | 8.39 | 8.68 | 12.56 | 1.31 | 16.2 | 3.48 | 47.7 | 81.4 | 1.15 | 0.76 | 0.09 | 190 | 190 | 12.6 | 11.9 | 11.0 | 2.4 | 29.1 | 4,852 |
| BOK Financial Corporation | Tulsa, OK | BOKF | 30,567 | 9.78 | 9.55 | 13.89 | 0.99 | 10.0 | 2.56 | 65.9 | 56.9 | 1.30 | 0.36 | 0.04 | 105 | 158 | 10.7 | 10.8 | 10.0 | 3.8 | 39.5 | 3,089 |
| Cullen/Frost Bankers, Inc. | San Antonio, TX | CFR | 28,341 | 7.57 | 7.91 | 13.96 | 1.06 | 13.9 | 3.40 | 57.0 | 43.5 | 0.64 | 0.97 | 0.11 | 129 | 129 | 9.7 | 9.7 | 9.4 | 4.9 | 46.3 | 2,703 |
| Synovus Financial Corp[2] | Columbus, GA | SNV | 28,793 | 9.90 | 9.43 | 12.70 | 0.81 | 7.5 | 3.19 | 62.7 | 76.4 | 1.12 | 0.83 | 0.06 | 128 | 126 | 17.3 | 14.7 | 13.0 | 1.7 | 25.9 | 3,634 |
| Associated Banc-Corp[2] | Green Bay, WI | ASB | 27,715 | 6.85 | 7.53 | 12.62 | 0.70 | 10.4 | 2.84 | 68.3 | 73.2 | 1.46 | 1.01 | 0.17 | 133 | 87 | 13.5 | 12.4 | 11.1 | 2.7 | 34.5 | 2,422 |
| First Horizon National Corporation[2] | Memphis, TN | FHN | 26,195 | 7.82 | 9.85 | 13.01 | 0.38 | 4.1 | 2.83 | 73.1 | 60.1 | 1.18 | 1.92 | 0.04 | 144 | 130 | 35.9 | 13.1 | 11.1 | 2.0 | 70.6 | 2,916 |
| Webster Financial Corporation[2] | Waterbury, CT | WBS | 24,678 | 7.12 | 8.28 | 12.91 | 0.87 | 12.0 | 3.08 | 60.0 | 73.5 | 1.11 | 1.34 | 0.30 | 170 | 127 | 14.8 | 13.3 | 11.8 | 2.9 | 41.4 | 2,908 |
| Commerce Bancshares, Inc.[2] | Kansas City, MO | CBSH | 24,605 | 8.72 | 9.23 | 13.33 | 1.12 | 12.3 | 2.94 | 60.8 | 54.1 | 1.18 | 0.24 | 0.30 | 144 | 179 | 14.9 | 14.8 | 12.7 | 2.4 | 33.9 | 3,702 |
| Umpqua Holdings Corporation | Portland, OR | UMPQ | 23,162 | 9.37 | 9.64 | 14.88 | 0.93 | 11.3 | 4.54 | 61.3 | 75.0 | 1.22 | 0.78 | 0.12 | 157 | 152 | 14.3 | 11.9 | 10.6 | 4.7 | 63.5 | 3,630 |
| BankUnited, Inc.[2] | Miami Lakes, FL | BKU | 23,883 | 9.30 | 9.30 | 13.40 | 1.18 | 11.6 | 3.40 | 58.9 | 64.9 | 1.29 | 0.44 | 0.10 | 185 | 153 | 14.1 | 14.6 | 10.5 | 2.5 | 46.5 | 3,428 |
| Wintrust Financial Corporation[2] | Rosemont, IL | WTFC | 22,917 | 7.16 | 9.10 | 12.20 | 0.75 | 9.4 | 3.36 | 66.1 | 71.2 | 0.83 | 0.70 | 0.16 | 118 | 118 | 13.4 | 11.5 | 10.5 | 1.1 | 15.0 | 1,900 |
| Hancock Holding Company[2] | Gulfport, MS | HBHC | 22,839 | 7.62 | 8.85 | 11.93 | 0.62 | 9.9 | 3.33 | 68.9 | 70.3 | 1.15 | 0.83 | 0.23 | 96 | 67 | 12.7 | 12.7 | 8.5 | 4.6 | 58.5 | 1,615 |
| Prosperity Bancshares, Inc. | Houston, TX | PB | 21,567 | 7.53 | 7.65 | 14.09 | 1.37 | 21.8 | 3.54 | 39.6 | 52.9 | 0.88 | 0.88 | 0.23 | 165 | 72 | 8.3 | 8.5 | 8.6 | 3.4 | 25.9 | 2,467 |
| TCF Financial Corporation | Wayzata, MN | TCB | 20,126 | 8.86 | 10.43 | 13.84 | 0.90 | 9.0 | 4.46 | 71.0 | 77.4 | 2.10 | 0.89 | 0.23 | 114 | 101 | 13.0 | 10.9 | 9.7 | 2.5 | 22.0 | 2,003 |

1   Non-Performing Assets equal to nonaccrual loans and leases, renegotiated loans and leases, and real estate owned.

[2]    FY1 Earnings Per Share represents 2015 Earnings Per Share estimates for companies who did not report Q4 2015 financial results as of January 21, 2016, and 2016 Earnings Per Share estimates where Q4 2015 financial results had been reported as of January 21, 2016. FY2 Earnings Per Share represents 2016 Earnings Per Share estimates for companies who did not report Q4 2015 financial results as of January 21, 2016, and 2017 Earnings Per Share estimates where Q4 2015 financial results had been reported as of January 21, 2016.

[3]    Financial data of the following companies as of December 31, 2015 except as otherwise indicated: Signature Bank; Synovus Financial Corp.; Associated Banc-Corp (LTM Return on Average Tangible Common Equity as of September 30, 2015); First Horizon National Corporation; Webster Financial Corporation; Commerce Bancshares, Inc. (Stock Price/Tangible Book Value, LTM Return on Average Tangible Common Equity, Tangible Common Equity/Tangible Assets and Total Risk Based Capital Ratio as of September 30, 2015); Bank United, Inc.; Wintrust Financial Corporation; and Hancock Holding Company (LTM Return on Average Tangible Common Equity as of September 30, 2015).

[*]    Indicates financial metric is unavailable or has been provided by FirstMerit management but is not comparable to data provided by SNL Financial.

*The following disclosure amends and restates the paragraph immediately following footnote (4) on page 81 of the Joint Proxy Statement/Prospectus in the section captioned "Opinion of Sandler O'Neill & Partners, L.P.".*

Sandler used publicly available information to perform a similar analysis for Huntington by comparing selected financial information for Huntington and a group of financial institutions selected by Sandler. The Huntington peer group consisted of <u>all</u> nationwide commercial banks whose securities are publicly traded on major United States exchanges with assets between $30.0 billion and $150.0 billion, excluding targets of announced merger transactions, companies with supervoting share structures and companies outside the continental United States. The Huntington peer group consisted of the following companies:

*The following disclosure is added immediately following footnote (4) on page 82 of the Joint Proxy Statement/Prospectus in the section captioned "Opinion of Sandler O'Neill & Partners, L.P.".*

The table below sets forth company-by-company pricing multiples and financial metrics examined. Regulatory data is used when GAAP data was unavailable.

Financial Data as of or for the Period Ending September 30, 2015
Pricing Data as of January 21, 2016

| Company | City, State | Ticker | Total Assets ($mm) | Capital Position | | | LTM Profitability | | | | Asset Quality | | | Price | | | | | Valuation | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | TCE/ TA (%) | Leverage Ratio (%) | Total RBC Ratio (%) | ROAA (%) | ROATCE (%) | Net Interest Margin (%) | Efficiency Ratio (%) | LLR/ Gross Loans (%) | NPAs/ Total Assets (%) | NCOs/ Avg. Loans (%) | Tang. Book Value (%) | Book Value (%) | LTM EPS (x) | FY1 Est. EPS[1] (x) | FY2 Est. EPS[2] (x) | Current Dividend Yield (%) | LTM Dividend Ratio (%) | LTM Market Value ($mm) |
| Fifth Third Bancorp | Cincinnati, OH | FITB | 141,082 | 8.71 | 9.54 | 14.13 | 1.22 | 13.5 | 2.88 | 56.8 | 1.36 | 1.43 | 0.34 | 85 | 7.8 | 9.1 | 8.1 | 3.3 | 25.9 | 12,340 |
| Citizens Financial Group, Inc. | Providence, RI | CFG | 135,447 | 9.70 | 10.40 | 15.41 | 0.61 | 6.5 | 2.77 | 66.9 | 1.23 | 1.45 | 0.31 | 87 | 14.3 | 13.5 | 11.3 | 1.9 | 26.8 | 11,254 |
| Regions Financial Corporation[3] | Birmingham, AL | RF | 126,050 | 9.28 | 10.40 | 13.90 | 0.87 | 8.7 | 3.14 | 64.9 | 1.36 | 1.55 | 0.38 | 92 | 10.4 | 9.2 | 8.2 | 3.1 | 30.7 | 10,160 |
| M&T Bank Corporation[3] | Buffalo, NY | MTB | 122,788 | 8.65 | 10.31 | 14.70 | 1.06 | 12.9 | 3.14 | 58.4 | 1.09 | 1.04 | 0.18 | 159 | 14.2 | 12.2 | 10.8 | 2.7 | 39.0 | 16,318 |
| KeyCorp[3] | Cleveland, OH | KEY | 95,133 | 9.97 | 10.68 | 12.98 | 0.98 | 10.1 | 2.89 | 66.9 | 1.32 | 0.55 | 0.24 | 100 | 10.6 | 9.7 | 8.0 | 2.7 | 27.6 | 9,335 |
| Comerica Incorporated[3] | Dallas, TX | CMA | 71,895 | 9.72 | 10.24 | 12.68 | 0.76 | 7.7 | 2.60 | 67.3 | 1.27 | 0.70 | 0.19 | 84 | 11.4 | 11.1 | 9.4 | 2.5 | 28.4 | 5,851 |
| Zions Bancorporation | Salt Lake City, UT | ZION | 58,411 | 9.76 | 11.65 | 16.46 | 0.50 | 4.2 | 3.19 | 72.5 | 1.48 | 0.94 | 0.31 | 77 | 19.2 | 17.6 | 10.9 | 1.1 | 18.2 | 4,390 |
| First Republic Bank[3] | San Francisco, CA | FRC | 58,981 | 7.51 | 9.21 | 13.78 | 0.96 | 11.6 | 3.21 | 54.4 | 0.59 | 0.15 | 0.01 | 212 | 20.1 | 17.4 | 14.8 | 0.9 | 18.6 | 9,344 |
| SVB Financial Group[3] | Santa Clara, CA | SIVB | 44,687 | 7.16 | 7.67 | 13.84 | 0.92 | 10.6 | 2.57 | 56.0 | 1.30 | 0.28 | 0.28 | 154 | 14.5 | 13.1 | 10.7 | 0.0 | 0.0 | 4,926 |
| People's United Financial, Inc[3] | Bridgeport, CT | PBCT | 38,877 | 7.19 | 8.11 | 11.70 | 0.70 | 10.4 | 2.88 | 64.3 | 0.74 | 0.94 | 0.09 | 164 | 16.7 | 15.1 | 13.8 | 4.7 | 77.6 | 4,445 |
| Signature Bank[*] | New York, NY | SBNY | 33,451 | 8.65 | 8.87 | 12.10 | 1.23 | 13.8 | 3.26 | 33.7 | 0.80 | 0.62 | 0.08 | 245 | 19.1 | 16.8 | 14.4 | 0.0 | 0.0 | 7,217 |
| East West Bancorp, Inc | Pasadena, CA | EWBC | 31,120 | 8.39 | 8.68 | 12.56 | 1.31 | 16.2 | 3.48 | 47.7 | 1.15 | 0.75 | 0.09 | 190 | 12.6 | 12.6 | 11.9 | 2.4 | 29.1 | 4,832 |
| BOK Financial Corporation | Tulsa, OK | BOKF | 30,565 | 9.78 | 9.55 | 13.89 | 0.99 | 10.0 | 2.56 | 65.9 | 1.30 | 0.39 | 0.04 | 105 | 10.7 | 10.8 | 10.0 | 3.8 | 39.5 | 3,089 |

\* Represents data not specifically available.

1 Non-Performing Assets equal to nonaccrual loans and leases, renegotiated loans and leases, and real estate owned.

2 FY1 Earnings Per Share represents 2015 Earnings Per Share estimates for companies who did not report Q4 2015 financial results as of January 21, 2016, and 2016 Earnings Per Share estimates for companies where Q4 2015 financial results had been reported as of January 21, 2016. FY2 Earnings Per Share represents 2016 Earnings Per Share estimates for companies who did not report Q4 2015 financial results as of January 21, 2016, and 2017 Earnings Per Share estimates for companies where Q4 2015 financial results had been reported as of January 21, 2016.

3 Financial data of the following companies as of December 31, 2015 except as otherwise indicated: Fifth Third Corporation; Regions Financial Corporation (LTM Return on Average Tangible Common Equity as of September 30, 2015); M&T Bank Corporation (LTM Return on Average Tangible Common Equity and Total Risk Based Capital Ratio as of September 30, 2015); KeyCorp (LTM Return on Average Tangible Common Equity as of September 30, 2015); Comerica Incorporated; First Republic Bank; SVB Financial Group (LTM Return on Average Tangible Common Equity as of September 30, 2015); People's United Financial, Inc. (LTM Return on Average Tangible Common Equity as of September 30, 2015); and Signature Bank.

*The following disclosure amends and restates the paragraph entitled "Analysis of Selected Merger Transactions" on page 82 of the Joint Proxy Statement/Prospectus in the section captioned "Opinion of Sandler O'Neill & Partners, L.P.".*

*Analysis of Selected Merger Transactions*

Sandler reviewed a group of selected merger and acquisition transactions. The group consisted of all nationwide bank and thrift transactions announced between January 1, 2013 and January 21, 2016 with over $1 billion in reported deal value (the "Precedent Transactions").

*The following disclosure is added to the end of page 83 of the Joint Proxy Statement/Prospectus in the section captioned "Opinion of Sandler O'Neill & Partners, L.P."*

The table below sets forth transaction-by transaction enterprise values, pricing multiples, and financial metrics. Sandler did not calculate per share value ranges for FirstMerit based on this analysis.

| | | | | Transaction Information | | | | | | | Transaction Information - Based on Acquirer's 30-Day VWAP | | | | | |
| | | | | | Price | | | | | | | | Price | | | | |
| Acquirer | Target | Annc. Date | Deal Value ($mm) | LTM Earnings (x) | Est. EPS (x) | TBV Value (%) | Core Deposit Premium (%) | 1-Day Market Premium (%) | Cost Savings (%) | Reported TBV Earnback (years) | Deal Value ($mm) | LTM Earnings (x) | Est. EPS (x) | Book Value (%) | TBV (%) | Core Deposit Premium (%) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BBCN Bancorp Inc. | Wilshire Bancorp Inc. | 12/07/15 | $1,027.4 | 16.1x | 16.5x | 194% | 22% | 22.9% | 40.0% | 5.0 | 1,002.9 | 15.7x | 15.9x | 189% | 210% | 21.9% |
| KeyCorp | First Niagara Fin'l Group | 10/30/15 | 4,171.8 | 19.3 | 19.0 | 106 | 6.7 | 9.8 | 40.0 | 10.0 | 4,080.3 | 18.9 | 18.6 | 104 | 165 | 6.3 |
| New York Community Bancorp | Astoria Financial Corp. | 10/29/15 | 1,944.2 | 23.0 | 28.8 | 128 | 7.3 | 7.8 | 50.0 | NA | 1,859.2 | 22.0 | 27.5 | 122 | 140 | 6.3 |
| BB&T Corp | National Penn Bancshares Inc. | 08/17/15 | 1,815.2 | 17.7 | 16.8 | 159 | 15.4 | 18.2 | 30.0 | 5.0 | 1,823.9 | 17.8 | 16.9 | 221 | 267 | 13.6 |
| Royal Bank of Canada | City National Corp. | 01/22/15 | 5,332.5 | 22.9 | 21.0 | 195 | 12.3 | 26.0 | 7.8 | 5.0 | 5,357.0 | 23.2 | 21.4 | 199 | NA | 12.6 |
| City National Corp. | Susquehanna Bancshares Inc | 11/12/14 | 2,500.9 | 18.6 | 17.4 | 172 | 8.9 | 39.1 | 32.0 | 5.0 | 2,432.4 | 16.1 | 16.9 | 88 | 167 | 8.3 |
| CIT Group Inc. | IMB HoldCo LLC | 07/22/14 | 3,369.1 | 13.6 | NA | 91 | 0.0 | NA | 47.6 | 4.0 | NA | NA | NA | NA | NA | NA |
| Umpqua Holdings Corp.[1] | Sterling Financial Corp. | 09/11/13 | 1,995.1 | 19.1 | 19.4 | 167 | 14.3 | 13.9 | 30.0 | 2.5 | 1,931.9 | 18.8 | 19.1 | 157 | 164 | 13.7 |
| PacWest Bancorp | CapitalSource Inc. | 07/22/13 | 2,381.9 | 5.4 | 19.1 | 150 | 35.4 | 20.1 | 23.0 | NA | 2,251.6 | 5.2 | 18.2 | 144 | 162 | 31.6 |

1  Umpqua Holdings Corp. base stock price for returns calculated using Umpqua Holdings Corp.'s unaffected closing price of each party before news sources began indicating that the Umpqua Holdings Corp. and Sterling Financial Corp were involved in the transaction.

2  Management cited TBV dilution of 'a little bit less than five years' on the transaction conference call assuming 100% stock consideration. The actual consideration was a 70%/30% stock/cash mix, making the actual TBV dilution earnback period greater than 5 years.

3  Immediately accretive to TBV.

*The following disclosure amends and restates the paragraph entitled "Net Present Value Analyses" on page 84 of the Joint Proxy Statement/Prospectus in the section captioned "Opinion of Sandler O'Neill & Partners, L.P."*

*Net Present Value Analyses*

Sandler performed an analysis that estimated the net present value per share of FirstMerit common stock, assuming FirstMerit performed in accordance with publicly available consensus median analyst earnings estimates for FirstMerit for the years ending December 31, 2016 through December 31, 2017 and estimated earnings per share growth rates for the years ending December 31, 2018 through December 31, 2020, as provided by the senior management of FirstMerit. To approximate the terminal value of FirstMerit common stock at December 31, 2020, Sandler applied price to 2020 earnings multiples ranging from 11.0x to 16.0x and multiples of December 31, 2020 tangible book value ranging from 130% to 180%. Sandler selected these price to earnings and tangible book value multiples based on Sandler's review of, among other matters, the trading multiples of selected companies that Sandler deemed to be comparable to FirstMerit, as discussed above. The terminal values were then discounted to present values using different discount rates ranging from 8.0% to 11.0%, which were chosen to reflect different assumptions regarding required rates of return or prospective buyers of FirstMerit common stock. As illustrated in the following tables, the analysis indicated an imputed range of values per share of FirstMerit common stock of $14.53 to $22.76 when applying multiples of earnings and $15.94 to $23.62 when applying multiples of tangible book value.

*The following disclosure amends and restates the first paragraph on page 85 of the Joint Proxy Statement/Prospectus in the section captioned "Opinion of Sandler O'Neill & Partners, L.P.".*

Sandler also performed an analysis that estimated the net present value per share of Huntington common stock, assuming that Huntington performed in accordance with publicly available consensus median analyst earnings per share estimates for Huntington for the years ending December 31, 2016 through December 31, 2017 and an estimated earnings per share growth rate for Huntington for the years ending December 31, 2018 through December 31, 2020, as provided by Huntington senior management. To approximate the terminal value of Huntington common stock at December 31, 2020, Sandler applied price to 2020 earnings multiples ranging from 11.0x to 16.0x and multiples of December 31, 2020 tangible book value ranging from 120% to 170%. <u>Sandler selected these price to earnings and tangible book value multiples based on Sandler's review of, among other matters, the trading multiples of selected companies that Sandler deemed to be comparable to Huntington, as discussed above.</u> The terminal values were then discounted to present values using different discount rates ranging from 8.0% to 11.0%, which were chosen to reflect different assumptions regarding required rates of return of holders or prospective buyers of Huntington common stock. As illustrated in the following tables, the analysis indicated an imputed range of values per share of Huntington common stock of $8.90 to $14.14 when applying earnings multiples and $8.70 to $13.47 when applying multiples of tangible book value.

*The following disclosure amends and restates the second full paragraph on page 87 of the Joint Proxy Statement/Prospectus in the section captioned "Opinion of Sandler O'Neill & Partners, L.P.".*

*Sandler's Relationship*

Sandler is acting as FirstMerit's financial advisor in connection with the merger and a significant portion of Sandler's fee is contingent upon the closing of the merger. Sandler's fee is equal to 0.67% of the aggregate purchase price, and is currently estimated to be approximately $24.7 million, which will become due and payable in immediately available funds on the day of closing of the merger. Sandler also received a $4.0 million fee from FirstMerit as a result of rendering its opinion, which fairness opinion fee will be credited in full towards the transaction fee that will become due and payable to Sandler on the day of closing of the merger. <u>Accordingly, based on an estimated fee of $24.7 million, approximately 83.8% of Sandler's fee would be contingent upon consummation of the merger.</u> FirstMerit has also agreed to indemnify Sandler against certain liabilities arising out of Sandler's engagement and to reimburse Sandler for certain of its out-of-pocket expenses incurred in connection with Sandler's engagement.

*The following disclosure amends and restates the section of the Joint Proxy Statement/Prospectus captioned "Certain Unaudited Prospective Financial Information of Huntington" beginning on page 87.*

-11-

**Certain Unaudited Prospective Financial Information**

Huntington and FirstMerit do not as a matter of course make public projections as to future earnings or other results due to, among other reasons, the uncertainty of the underlying assumptions and estimates. In connection with the proposed transaction, however, (1) Huntington provided to the Huntington board of directors and Goldman Sachs, its financial advisor, for purposes of performing its financial analyses described above under "The Merger—Opinions of Goldman, Sachs & Co." certain unaudited prospective financial information with respect to Huntington and FirstMerit, each on a stand-alone, pre-merger basis, (2) FirstMerit provided to the FirstMerit board of directors and Sandler, its financial advisor, for purposes of performing its financial analyses described above under "The Merger—Opinion of Sandler O'Neill & Partners, L.P." certain unaudited prospective financial information with respect to FirstMerit on a stand-alone, pre-merger basis, (3) Huntington management provided to Goldman Sachs and Sandler certain unaudited prospective financial information of FirstMerit giving effect to the merger and as owned by Huntington and (4) at the request of FirstMerit management, Huntington management provided Sandler certain unaudited prospective financial information with respect to Huntington on a stand-alone, pre-merger basis.

The stand-alone financial projections below were not prepared with a view toward public disclosure or with a view toward complying with the guidelines established by the American Institute of Certified Public Accountants with respect to prospective financial information, published guidelines of the SEC regarding forward-looking statements or generally accepted accounting principles in the United States ("GAAP"), but, in the view of the respective management teams of Huntington and FirstMerit, were prepared on a reasonable basis, reflected the best then-available estimates and judgments and presented, to the best of the respective management teams' knowledge and belief, the expected course of action and the expected future financial performance of Huntington and FirstMerit on a stand-alone basis.

However, this information is not fact and should not be relied upon as being necessarily indicative of future results, and readers of this joint proxy statement/prospectus are cautioned not to place undue reliance on the prospective financial information. No representation is made by Huntington, FirstMerit or their respective affiliates or advisors or any other person to any Huntington stockholder or FirstMerit common shareholder regarding the ultimate performance of Huntington, FirstMerit or the combined company compared to the results included in the unaudited prospective financial information presented below.

_FirstMerit net income available to common shareholders projections_

For purposes of performing its financial analyses of FirstMerit on a standalone basis, Huntington management instructed Goldman Sachs to use net income estimates equal to the I/B/E/S consensus median net income estimates for 2016 and 2017 for FirstMerit and, for years after 2017, to use net income projections that reflected a year-over-year growth rate equal to the rate of net income growth from 2016 to 2017. These net income projections are reflected below.

-12-

| | For the Years Ended December 31, | | | | |
|---|---|---|---|---|---|
| | **2016** | **2017** | **2018** | **2019** | **2020** |
| Net income available to common shareholders (millions) | $234 | $257 | $283 | $311 | $342 |

For purposes of performing its financial analyses of FirstMerit on a standalone basis, FirstMerit management instructed Sandler to use net income estimates equal to the I/B/E/S consensus median net income estimates for 2016 and 2017 for FirstMerit and, for years after 2017, to use an estimated internal projected earnings growth rate for the years thereafter. These net income projections are reflected below.

| | For the Years Ended December 31, | | | | |
|---|---|---|---|---|---|
| | **2016** | **2017** | **2018** | **2019** | **2020** |
| Net income available to common shareholders (millions) | $234 | $256 | $277 | $290 | $305 |

The projections used by Goldman and Sandler for 2018-2020 differ because Goldman used a growth rate equal to the rate of net income growth from 2016 to 2017 and Sandler used an estimated internal projected earnings growth rate provided by FirstMerit.

*Huntington net income available to common stockholders projections*

For purposes of performing its financial analyses of Huntington on a standalone and pro forma basis, Huntington management provided to Goldman Sachs the projections noted below.

| | For the Years Ended December 31, | | | | |
|---|---|---|---|---|---|
| | **2016** | **2017** | **2018** | **2019** | **2020** |
| Net income available to common stockholders (millions) | $725 | $776 | $843 | $898 | $949 |

For purposes of performing its financial analyses of Huntington on a standalone basis, FirstMerit management instructed Sandler to use net income estimates equal to the I/B/E/S consensus median net income estimates for 2016 and 2017 for Huntington and, for years after 2017, to use an estimated internal projected earnings growth rate for the years thereafter provided by Huntington management. These net income projections are reflected below.

-13-

| | For the Years Ended December 31, | | | | |
|---|---|---|---|---|---|
| | **2016** | **2017** | **2018** | **2019** | **2020** |
| Net income available to common stockholders (millions) | $716 | $782 | $828 | $878 | $931 |

The projections used by Goldman and Sandler for Huntington differ because Goldman used internal Huntington projections and Sandler used I/B/E/S consensus median net income estimates for 2016 and 2017 and, for years after 2017, an estimated internal projected earnings growth rate provided by Huntington management.

### Pro Forma Financial Analysis

In addition, for purposes of performing its pro forma financial analysis Huntington instructed Goldman Sachs to use forecasts for FirstMerit giving effect to the merger, including to reflect fully phased in projected cost synergies of 40% of FirstMerit's noninterest expense, estimated restructuring charges of $418 million and core deposit intangible amortization over eight years. These same forecasts were provided to Sandler by Huntington at the request of FirstMerit management.

Neither Huntington's nor FirstMerit's independent registered public accounting firm nor any other independent accountants have compiled, examined or performed any procedures with respect to the accompanying unaudited prospective financial information contained herein, nor have they expressed any opinion or any other form of assurance on such information or its achievability, and assume no responsibility for, and disclaim any association with, such information. The reports of Huntington's and FirstMerit's independent registered public accounting firms related to Huntington's and FirstMerit's historical financial information are incorporated by reference herein. Such reports do not extend to prospective financial information and should not be read to do so.

The summary of the unaudited prospective financial information is not being included to influence FirstMerit common shareholders' decision whether to vote for the approval of the merger and the other transactions contemplated by the merger agreement or Huntington common stockholders' decision whether to vote for the approval of the issuance of shares of Huntington common stock in connection with the merger, but is being provided because such information was considered in connection with the merger and was provided to the Huntington board of directors and to Huntington's financial advisors.

The unaudited prospective financial information was prepared based solely on information available at the time of preparation and is not a guarantee of actual future results, and such financial information should not be relied upon as such. The assumptions made in preparing the unaudited prospective financial information may not accurately reflect future conditions. The estimates and assumptions underlying the unaudited prospective financial information involve judgments with respect to, among other things, future economic, competitive, regulatory and

-14-

financial market conditions and future business decisions that may not be realized and that are inherently subject to significant business, economic, competitive and regulatory uncertainties and contingencies, including, among others, risks and uncertainties described under "Risk Factors" and "Cautionary Statement Regarding Forward-Looking Statements," all of which are difficult to predict and many of which are beyond the control of the parties and will be beyond the control of the combined company after the merger. None of Huntington, FirstMerit or their respective affiliates or financial advisors or any other person assumes any responsibility to shareholders for the accuracy of this information. Financial forecasts involve risks, uncertainties and assumptions. The parties cannot assure you that any forecasts will be realized or that future financial results will not materially vary from such financial forecasts. The unaudited prospective financial information covers multiple years and such information by its nature becomes subject to greater uncertainty with each successive year. Such information does not take into account any circumstances or events occurring after the dates they were prepared. **HUNTINGTON AND FIRSTMERIT DO NOT HAVE ANY OBLIGATION TO, AND WILL NOT, UPDATE OR OTHERWISE REVISE THE FINANCIAL FORECASTS INCLUDED IN THIS JOINT PROXY STATEMENT/PROSPECTUS TO REFLECT THE OCCURRENCE OF SUBSEQUENT EVENTS, EVEN IN THE EVENT THAT ANY OR ALL OF THE ASSUMPTIONS UNDERLYING SUCH FINANCIAL FORECASTS ARE NO LONGER APPROPRIATE.**

The unaudited prospective financial information included in this joint proxy statement/prospectus constitute forward-looking statements. For more information on factors which may cause future financial results to materially vary from those projected in the forecasts, see "Where You Can Find More Information," "Risk Factors" and "Cautionary Statement Regarding Forward-Looking Statements."

EXHIBIT B

**Exhibit B**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| IN RE FIRSTMERIT CORPORATION SHAREHOLDER LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Lead Case No:  5:16-cv-00461<br><br>MASTER FILE |

## [PROPOSED] SCHEDULING ORDER AND
## ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT

WHEREAS, the Parties, by and through their respective counsel, have agreed to settle the above-captioned consolidated putative shareholder class action (the "Action"); and

WHEREAS, the Parties to the Action have applied, pursuant to Federal Rule of Civil Procedure 23(e), for an Order preliminarily approving the proposed Settlement of the Action in accordance with the Stipulation of Settlement entered into by the parties on September 28, 2016 (the "Stipulation"), and for the dismissal of the Action upon the terms and conditions set forth in the Stipulation.

NOW, after review and consideration of the Stipulation and accompanying documents filed with the Court, and after due deliberation,

IT IS HEREBY ORDERED AND ADJUDGED this ____ day of _____, 2016, that:

1.     This Order incorporates and makes part hereof the Stipulation, including the Exhibits thereto.  Unless otherwise defined, the capitalized terms in this Order have the same meaning as they have in the Stipulation.

2.      Solely for purposes of the Settlement, the Action shall be preliminarily certified and maintained as a non-opt-out class action, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), on behalf of a class that includes any and all record holders and beneficial holders of FirstMerit stock who held or owned such stock at any time during the period beginning on and including January 26, 2016 through and including August 16, 2016 (the closing date of the Merger), including any and all of their respective predecessors-in-interest, predecessors, successors-in-interest, successors, trustees, executors, administrators, estates, heirs, assigns, and transferees, immediate and remote, and any Person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns  (the "Class").  Excluded from the Class are Defendants, members of their immediate families, and any Person, firm, trust, corporation or other entity related to, controlled by, or affiliated with, any Defendants, and the legal representatives, heirs, successors, and assigns of such excluded Persons.

3.      The Court preliminary concludes, based on the information submitted to date, that each of the provisions of Federal Rule of Civil Procedure 23 has been satisfied, and that the Action can properly be maintained as a class action for settlement purposes according to the provisions of Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2).  Specifically, the Court finds that (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of Plaintiffs as representative plaintiffs are typical of the claims of the Class; (d) the Plaintiffs and their counsel have fairly and adequately protected and represented the interests of the Class; and (e) prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish inconsistent standards of conduct for Defendants

and/or the Action alleges that Defendant acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief is appropriate respecting the Class as a whole.

4. The proposed Settlement, as embodied in the Stipulation and the Exhibits attached thereto, is hereby preliminarily approved as fair, reasonable, adequate, and in the best interests of the Class, subject to further consideration at a final hearing on the proposed Settlement (the "Settlement Hearing").

5. The Settlement Hearing shall be held no earlier than 90 days from the entry of this Order in the United States District Court for the Northern District of Ohio, Eastern Division, 313 Thomas D. Lambros United States Federal Building and Courthouse, 125 Market Street, Youngstown, Ohio 44503, to:

    a. Determine whether the preliminary certifications herein should be made final;

    b. Determine whether the Settlement should be finally approved by the Court as fair, reasonable, adequate, and in the best interests of the Class;

    c. Determine whether a Final Judgment (in the form attached to the Stipulation as Exhibit B) should be entered in the Action pursuant to the Stipulation;

    d. Consider the joint application of Plaintiffs and Plaintiffs' Counsel for an award of attorneys' fees and expenses;

    e. Hear and determine any objections to the Settlement or the application of Plaintiffs' Counsel in the Action for an award of attorneys' fees and expenses; and

    f. Consider other matters that the Court deems appropriate.

6. The Court reserves the right to adjourn the Settlement Hearing or any adjournment thereof, including the consideration of the application for attorneys' fees, without further notice of any kind other than oral announcement at the Settlement Hearing or any adjournment thereof.

7.     The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modification(s) as may be consented to by the Parties to the Stipulation and without further notice to the Class.

8.     At least forty-five (45) days prior to the Settlement Hearing, FirstMerit, or its successor in interest, shall cause the Notice, substantially in the form attached to the Stipulation as Exhibit B-1, to be mailed by United States mail, postage pre-paid, to all reasonably identifiable members of the Class at their last known addresses set forth in the stock transfer records maintained by or on behalf of FirstMerit. All record holders in the Class who were not also the beneficial owners of the shares of common stock of FirstMerit held by them of record are requested to forward the Notice to such beneficial owners of those shares. FirstMerit, or its successor in interest, shall use reasonable efforts to give notice to such beneficial owners by (a) making additional copies of the Notice available to any record holder who, prior to the Settlement Hearing, requests copies for distribution to beneficial owners, or (b) mailing additional copies of the Notice to beneficial owners as reasonably requested by record holders who provide names and addresses for such beneficial holders. FirstMerit, or its successor in interest, shall be responsible for and shall pay all costs and expenses incurred in providing such Notice to the members of the Class.

9.     The Court approves, in form and substance, the notice substantially in the form described in Paragraph 8 of this Order.  The Court finds that the form and method of notice specified herein is the best notice practicable and shall constitute due and sufficient notice of the Settlement Hearing to all Persons entitled to receive such notice, and fully satisfies the requirements of due process, Federal Rule of Civil Procedure 23, and applicable law.

Defendants' Counsel shall, at least seven (7) days prior to the date of the Settlement Hearing directed herein, file with the Court proof, by affidavit, of dissemination of the Notice.

10.     At least seven (7) calendar days before the Settlement Hearing, Defendants' Counsel shall file with the Court proof, by affidavit, of notice to relevant public officials in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

11.     All papers including memoranda and briefs in support of the Settlement and attorneys' fees and expenses shall be filed and served at least twenty-one (21) calendar days prior to the Settlement Hearing. If any objections to the Settlement are received or filed, Plaintiffs and/or Defendants may serve and file a brief in response to those objections no later than seven (7) calendar days before the Settlement Hearing,

12.     All proceedings in the Action, except for those proceedings related to the Settlement, shall be stayed until the resolution of all such Settlement-related proceedings. Subject to the order of the Court, pending final determination of whether the Settlement provided for in the Stipulation should be approved, each and all of the Releasing Persons, are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement, prosecution, or instigation of any action asserting any claims that are, or relate in any way to, Settled Claims (including Unknown Claims), either directly, representatively, derivatively, or in any other capacity, against any Released Person.

13.     Any member of the Class who objects to the Settlement, the Order and Final Judgment to be entered in the Action, and/or the joint application by Plaintiffs and Plaintiffs' Counsel for attorneys' fees and expenses, or who otherwise wishes to be heard, may appear in person or by his or her attorney at the Settlement Hearing at the Class member's expense and present evidence or argument that may be proper and relevant; <u>provided</u>, however, that except

5

for good cause shown, no Person other than Plaintiffs' Counsel and counsel for the Defendants shall be heard, and no papers, briefs, pleadings, or other documents submitted by any member of the Class shall be considered by the Court, unless not later than fifteen (15) calendar days prior to the Settlement Hearing, such Person files with the Court:  (a) a written notice of intention to appear; (b) proof of membership in the Class, by way of brokerage statement, account statement, or other document evidencing ownership of shares of FirstMerit stock during the Class Period; (c) a detailed statement of the objections by the member of the Class to any matters before the Court; and (d) the grounds for such objections and the reasons why such member of the Class desires to appear and be heard, as well as all documents or writings such Person desires the Court to consider.  On or before such filing, such Person must serve these materials by hand or overnight mail on the following counsel of record:

> Michael J. Palestina
> KAHN SWICK & FOTI, LLC
> 206 Covington Street
> Madisonville, LA 70447
> (504) 455-1400
> (504) 455-1498
> **Attorneys for Lead Plaintiff Mary H. Wojno and Co-Lead Counsel**

> Shannon L. Hopkins
> LEVI & KORSINSKY, LLP
> 733 Summer Street, Suite 304
> Stamford, CT 06901
> Tel: (203) 992-4523
> Fax: (212) 363-7500
> **Attorneys for Lead Plaintiff Jack Wilkinson and Co-Lead Counsel**

> Brian D. Long
> RIGRODSKY & LONG, P.A.
> 2 Righter Parkway, Suite 120
> Wilmington, DE 19803
> Tel: (302) 295-5310
> **Attorneys for Lead Plaintiff Michael Hafner and Co-Lead Counsel**

Lazar P. Raynal
William P. Schuman
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL  60606
***Attorneys for Individual Defendants***

Stephen DiPrima
Benjamin Klein
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
***Attorneys for Huntington Defendants***

14.     Any Person who fails to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding.  Settlement Class members who do not object need not appear at the Settlement Hearing or take any other action to indicate their approval.

15.     Neither the Stipulation nor the Settlement, or any orders or judgments entered in connection with the Stipulation or the Settlement, the MOU, the negotiations leading up to or in connection with the Stipulation, or the MOU or the Settlement nor any action taken pursuant to or to carry out the Stipulation or the Settlement, including any documents produced in Confirmatory Discovery, is, may be construed as, or may be used as evidence or an admission by or against Defendants or the other Released Persons of any fact, claim, assertion, matter, contention, fault, culpability, obligation, wrongdoing or liability whatsoever but that the Stipulation and its exhibits and any order entered in connection therewith may be filed in the Action or related litigation as evidence of the Settlement, or to enforce its terms or in any other or subsequent action against or by the Released Persons to support a defense of *res judicata*, collateral estoppel, release or other theory of claim or issue preclusion or similar defense.

16.    Any Person falling within the definition of the Class shall be bound by all determinations and judgments in the Action concerning the Settlement, including, but not limited to, the releases provided for therein, whether favorable or unfavorable to the Class.

17.    If the Settlement is approved by the Court following the Settlement Hearing, a Final Judgment will be entered as described in the Stipulation.

18.    If any specified condition to the Settlement set forth in the Stipulation is not satisfied and counsel for Plaintiffs or Defendants elects to terminate the Settlement as provided for in the Stipulation, the Stipulation and this Order shall have no force or effect (other than as contemplated in the Stipulation), and all negotiations and statements made in connection therewith shall be without prejudice to any Person or entities' rights, and the Parties to the Action shall be restored to their respective positions existing prior to the execution of the MOU.

19.    The Court may, for good cause, extend any of the deadlines set forth in this Order or adjourn the date for the Settlement Hearing without further notice to members of the Class.

20.    This matter is set for Settlement Hearing on _____ at _____m. in Courtroom 313 of the Thomas D. Lambros United States Federal Building and Courthouse, 125 Market Street, Youngstown, Ohio 44503.


_____
The Honorable Benita Y. Pearson
United States District Judge

# EXHIBIT B-1

**Exhibit B-1**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTMERIT CORPORATION SHAREHOLDER LITIGATION | Lead Case No:  5:16-cv-00461 |
| | MASTER FILE |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

### NOTICE OF PENDENCY OF CLASS ACTION,
### PROPOSED SETTLEMENT OF CLASS ACTION,
### SETTLEMENT HEARING, AND RIGHT TO APPEAR

TO:  ALL RECORD HOLDERS AND BENEFICIAL HOLDERS OF FIRSTMERIT CORPORATION ("FIRSTMERIT") STOCK WHO HELD OR OWNED SUCH STOCK AT ANY TIME DURING THE PERIOD BEGINNING ON AND INCLUDING JANUARY 26, 2016 THROUGH AND INCLUDING AUGUST 16, 2016 (THE CLOSING DATE OF THE MERGER OF FIRSTMERIT AND HUNTINGTON BANCSHARES, INCORPORATED) (THE "MERGER"), INCLUDING ANY AND ALL OF THEIR RESPECTIVE PREDECESSORS-IN-INTEREST, PREDECESSORS, SUCCESSORS-IN-INTEREST, SUCCESSORS, TRUSTEES, EXECUTORS, ADMINISTRATORS, ESTATES, HEIRS, ASSIGNS, AND TRANSFEREES, IMMEDIATE AND REMOTE, AND ANY PERSON OR ENTITY ACTING FOR OR ON BEHALF OF, OR CLAIMING UNDER, ANY OF THEM, AND EACH OF THEM, TOGETHER WITH THEIR PREDECESSORS-IN-INTEREST, PREDECESSORS, SUCCESSORS-IN-INTEREST, SUCCESSORS, AND ASSIGNS.

### IMPORTANT

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

**PLEASE READ ALL OF THIS NOTICE CAREFULLY. YOUR RIGHTS WILL BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS ACTION.  IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE FAIRNESS, REASONABLENESS AND ADEQUACY OF THE PROPOSED SETTLEMENT, OR PURSUING THE SETTLED CLAIMS (AS DEFINED HEREIN).**

**IF YOU HELD OR TENDERED THE COMMON STOCK OF FIRSMERIT FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER.**

**THIS NOTICE IS NOT INTENDED TO BE A COMPLETE DESCRIPTION OF THE SETTLEMENT.  THE STIPULATION OF SETTLEMENT ("STIPULATION") CONTAINS THE FULL AND COMPLETE TERMS OF THE SETTLEMENT, AND IS AVAILABLE AS SET FORTH BELOW.**

## I.    THE PURPOSE OF THIS NOTICE

The purpose of this Notice is to inform you of the proposed settlement (the "Settlement") of the above-captioned consolidated lawsuit (the "Action"), pending before the United States District Court for the Northern District of Ohio (the "Court"), on the terms set forth in the Stipulation of Settlement filed with the Court on September 28, 2016 (the "Stipulation").[1]

This Notice also informs you that the Court has conditionally certified a Class[2] for purposes of the Settlement and notifies you of your right to participate in a hearing to be held on _____, before the Court in the Thomas D. Lambros United States Federal Building and Courthouse, 125 Market Street, Youngstown, Ohio 44503 (the "Settlement Hearing").  The purpose of the Settlement Hearing is to:

- determine whether the Court should approve the Settlement as fair, reasonable, adequate, and in the best interests of the Class (as defined below) and direct consummation of the Settlement in accordance with its terms and conditions;

- determine whether to certify the Class as a non-opt out class for purposes of the settlement pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), and 23(b)(2);

---

[1]    Unless otherwise defined in this Notice, all capitalized terms have the meaning set forth in the Stipulation.

[2]    The "Class" includes any and all record holders and beneficial holders of FirstMerit stock who held or owned such stock at any time during the period beginning on and including January 26, 2016 through and including August 16, 2016 (the closing date of the Merger) (the "Class Period"), including any and all of their respective predecessors-in-interest, predecessors, successors-in-interest, successors, trustees, executors, administrators, estates, heirs, assigns, and transferees, immediate and remote, and any Person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns.  Excluded from the Class are Defendants, members of their immediate families, and any Person, firm, trust, corporation or other entity related to, controlled by, or affiliated with, any Defendants, and the legal representatives, heirs, successors, and assigns of such excluded Persons.

- determine whether Plaintiffs Mary H. Wojno, Jack Wilkinson, and Michael Hafner, who have been appointed as lead plaintiffs to act as representatives of the Class, and their counsel at the law firms of Kahn Swick & Foti, LLC, Levi & Korsinsky LLP, and Rigrodsky & Long, P.A., who have been appointed as co-lead counsel to the lead plaintiffs, have adequately represented the interests of the Class in the Action;

- determine whether to dismiss the Releasing Persons'[3] claims with prejudice against the Released Persons[4];

- determine whether to permanently bar and enjoin the members of the Class from instituting, commencing, prosecuting, participating in, or continuing any action or other proceeding in any court or tribunal of this or any other jurisdiction, either directly, representatively, derivatively or in any other capacity, asserting any claims that are, arise out of, or in any way relate to, the Settled Claims[5];

---

[3]      "Releasing Persons" means Plaintiffs Mary H. Wojno, Jack Wilkinson, and Michael Hafner and each Member of the Class (as defined above).

[4]      "Released Persons" means each of the Defendants, and each of their respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, funding sources, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, coinsurers, reinsurers, and associates of each and all of the foregoing.

[5]      "Settled Claims" means any and all claims (including Unknown Claims) of any kind whatsoever that any or all of the Releasing Persons ever had or now have or could, can or might assert against any of the Released Persons which: (a) are based on his, her, or its ownership of FirstMerit common stock during the Class Period; (b) are based on any state's statute, common law or rule; any federal securities laws or rules concerning disclosure; or any "aiding and abetting" theories related thereto; and (c) arise out of or relate to, directly or indirectly, the conduct or omission by any Released Person in the process leading up to, the negotiation of, discussions concerning, and/or the terms of the Merger, or the Merger Agreement; the adequacy, accuracy, and completeness of any disclosures made by or on behalf of any Released Person relating to the Merger, including, but not limited to, the preliminary proxy, the Joint Proxy, and the Supplemental Disclosures; the allegations in any complaint or amended complaint filed in the Action; and/or the conduct or omission by any of the Released Persons in connection with the negotiation or execution of the Stipulation and the Settlement; provided, however, that the Settled Claims shall not include, (i) any claims under the federal or state securities laws alleging the existence of material inaccuracies in Huntington's financial statements (notwithstanding, Plaintiffs acknowledge that they presently have no basis to assert any inaccuracies in such financial statements), (ii) claims to enforce the Stipulation, or the Settlement, (iii) claims for appraisal under Section 1701.85 of the Ohio General Corporation Law or (iv) any claims that arise under the Hart-Scott-Rodino, Sherman, or Clayton Acts, or any other state or federal antitrust law.

3

- rule on the application of Plaintiffs' Counsel for an award of attorneys' fees and expenses;

- hear and determine any objections to the Settlement and to final certification of the Class; and

- to consider other matters, including a request by Plaintiffs and Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of expenses.

This Notice describes the rights that you may have under the Settlement and what steps you may, but are not required to, take in relation to the Settlement.  If the Court approves the Settlement, the Parties to the Action will ask the Court at the Settlement Hearing to enter an Order and Final Judgment dismissing the Action with prejudice.

**THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT. IT IS BASED ON STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES.**

## II.    BACKGROUND OF THE ACTION

On January 26, 2016, FirstMerit and Huntington Bancshares, Incorporated ("Huntington") announced that their respective boards of directors had approved a definitive agreement under which Huntington would acquire FirstMerit.  Under the terms of the Merger, FirstMerit shareholders were entitled to receive 1.72 shares of Huntington stock and $5.00 in cash for each FirstMerit share they held.

On February 26, 2016, Mary H. Wojno ("Wojno"), in her capacity as the Trustee of the Mary H. Wojno Revocable Trust, filed the *Wojno* Action alleging that Defendants breached their fiduciary duties and/or aided and abetted breaches of fiduciary duties in connection with entering into the Merger.

4

On March 4, 2016, Huntington made its initial filing of a Registration Statement on Form S-4 with the United States Securities and Exchange Commission ("SEC"), which included the preliminary joint proxy statement/prospectus of Huntington and FirstMerit and which was amended from time to time.

On March 23, 2016, Jack Wilkinson ("Wilkinson") filed the *Wilkinson* Action, alleging that Defendants breached their fiduciary duties and/or aided and abetted breaches of fiduciary duties in connection with entering into the Merger and violated Section 14(a) and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") by allegedly disseminating a preliminary proxy statement that was materially misleading.

On March 28, 2016, Michael Hafner ("Hafner") filed the *Hafner* Action alleging that Defendants breached their fiduciary duties and/or aided and abetted breaches of fiduciary duties in connection with entering into the Merger and violated Section 14(a) and Section 20(a) of the Exchange Act by allegedly disseminating a preliminary proxy statement that was materially misleading.

On April 4, 2016, Wojno filed an amended class action and derivative complaint in the Northern District of Ohio, which included disclosure-based claims under Section 14(a) and Section 20(a) of the Exchange Act.

On April 7, 2016, Wojno and Wilkinson made a motion for limited expedited discovery, which was opposed by Defendants on April 21.

On April 29, 2016, Huntington and FirstMerit each filed the Joint Proxy with the SEC, which they assert was mailed to the respective company's stockholders.

On May 6, 2016, the Court denied Wojno's and Wilkinson's motion for expedited discovery finding that discovery was stayed pursuant to the Private Securities Litigation Reform Act of 1995 pending a decision on Defendants' forthcoming motion to dismiss.

On May 9, 2016, the Court entered proposed orders consolidating the *Wojno*, *Wilkinson*, and *Hafner* actions, designating the March 23, 2016 complaint filed in the Wilkinson action as the operative complaint, and establishing an organizational structure designating interim lead plaintiffs and interim co-lead counsel.

On May 18, 2016, Plaintiffs filed a motion for preliminary injunction seeking to enjoin the FirstMerit shareholder vote scheduled for June 13, 2016 until such time as Defendants supplemented the Joint Proxy as specified in the memorandum accompanying Plaintiffs' motion.

On May 20, 2016, Defendants filed a motion to dismiss the operative complaint, and on May 27, 2016, Defendants filed an opposition to Plaintiffs' motion for preliminary injunction.

Between May 16, 2016 and June 6, 2016, Defendants' counsel and Plaintiffs' Counsel conducted negotiations regarding a potential settlement of the Action.  On June 6, 2016, the Parties reached an agreement in principle, set forth in a Memorandum of Understanding ("MOU"), providing for settlement of the Action by and among the Parties, on behalf of themselves and the putative Class on behalf of whom Plaintiffs brought the Action.

Pursuant to the MOU, as a result of the pendency and prosecution of the Action and extensive arm's-length negotiations, Defendants agreed that, *inter alia*, FirstMerit would file with the SEC a Current Report on Form 8-K (the "Form 8-K") containing certain agreed-upon supplemental disclosures concerning the Merger (the "Supplemental Disclosures").  On June 7, 2016, FirstMerit filed with the SEC a Form 8-K that included, *inter alia*, the Supplemental Disclosures.

On June 13, 2016, the shareholders of FirstMerit and Huntington, respectively, voted in favor of the Merger. FirstMerit shareholders approved the Merger by an affirmative vote of approximately 98% of votes cast. Huntington shareholders approved the issuance of Huntington common stock in connection with the Merger by an affirmative vote of approximately 99% of votes cast. On August 16, 2016, the Merger closed.

Following shareholder approval of the Merger, pursuant to the terms of the MOU, Defendants provided Plaintiffs' Counsel with confirmatory discovery to allow Plaintiffs to confirm the fairness, reasonableness and adequacy of the proposed Settlement (the "Confirmatory Discovery"). During August 2016, Defendants produced to Plaintiffs' Counsel more than 11,500 pages of confidential documents as part of Confirmatory Discovery, including contemporaneous process-related emails and financial materials both from FirstMerit and its financial advisors.

As part of Confirmatory Discovery, Plaintiffs' Counsel also conducted depositions of FirstMerit personnel and a representative of Sandler O'Neill, FirstMerit's financial advisor. On August 31, 2016, Plaintiffs' Counsel deposed William Burgess, a Principal in Sandler O'Neill's Investment Banking Group who served as the primary advisor to FirstMerit in connection with the Merger. On September 2, 2016, Plaintiffs' Counsel deposed Paul Greig, FirstMerit's Chairman, Chief Executive Officer, and President. On September 6, 2016, Plaintiffs' Counsel deposed John Blickle, FirstMerit's lead director and the non-executive director most involved in the sales process.

## III.    REASONS FOR THE SETTLEMENT

Plaintiffs' Counsel have reviewed and analyzed the claims asserted in the Action, including by conducting discussions with counsel to Defendants; analyzing disclosures provided

by FirstMerit, confidential documents produced by Defendants, documents obtained through publicly available sources, applicable case law, and other authorities; conducting depositions; and communicating with Plaintiffs' financial consultant.  Based on this investigation, Plaintiffs decided to enter into the Stipulation, and settle the Action based upon the terms and conditions set forth therein, after taking into account, among other things, (1) the benefits to the Class from the litigation of the Action and the Settlement; (2) the risks of continued litigation in this Action; and (3) the conclusion reached by the Plaintiffs and their counsel that the Settlement upon the terms and provisions set forth in the Stipulation is fair, reasonable, adequate, and in the best interests of the Class and has resulted in a benefit to them.

Plaintiffs' Counsel believes that the Supplemental Disclosures provided to FirstMerit's shareholders set forth substantial additional information that had previously been undisclosed, and thereby allowed for a more informed vote on the Merger.  Plaintiffs' Counsel also recognized and acknowledged the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals.  Plaintiffs' Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation.  They are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the Action.

Defendants have denied and continue to deny each and every claim and contention alleged by the Plaintiffs in the Action.  Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them as alleged in the complaints in the Action, and specifically deny that the proxy materials provided to FirstMerit and Huntington shareholders were incomplete or in any way misleading or that any additional disclosure was

required under the SEC rules or any applicable legal principle.  Further, Defendants have denied and continue to deny that they have committed, threatened to commit, or aided and abetted in the commission of any wrongdoing, violation of law, or breach of duty in connection with the Settled Claims and the subject matter thereof, including with respect to the proxy materials and the disclosures to FirstMerit and Huntington shareholders contained therein.

## IV.    SUMMARY OF THE SETTLEMENT

In consideration for the Settlement and the release of all Settled Claims, FirstMerit made the Supplemental Disclosures in the Form 8-K filed with the SEC on June 7, 2016.  The information contained in the Supplemental Disclosures had not been included in the Joint Proxy filed with the SEC on April 29, 2016, and Plaintiffs considered such information to be material and important for FirstMerit shareholders to make a fully informed decision with respect to whether or not to vote their shares in favor of the Merger.  The full text of the Supplemental Disclosures is attached to the Stipulation as Exhibit A.

Subject to the approval of the Court, the Settled Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to all Parties, upon and subject to the terms and conditions of the Stipulation.  The Settlement further provides that each and all of the Releasing Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Settled Claims (including Unknown Claims) against the Released Persons and shall have covenanted not to sue the Released Persons with respect to any or all such Settled Claims.

The Settlement also provides that the Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged, Plaintiffs, each and all of the Class Members, and Plaintiffs' Counsel from all claims

9

(including Unknown Claims), based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Action or the Settled Claims, except to enforce the releases, waivers, covenants-not-to-sue, or other terms and conditions contained in the Stipulation; provided, however, that the release shall not include the right of the Defendants to enforce the terms of the Stipulation and the Settlement.

## V.   APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiffs and Plaintiffs' Counsel intend to petition the Court for an award of attorneys' fees and expenses in an amount not to exceed in the aggregate $315,000 (including costs, disbursements, and expert and consultant fees).  Defendants have agreed not to oppose Plaintiffs' Counsel's application.   The Stipulation provides that FirstMerit (or its insurers and/or successor(s) in interest) shall pay fees and expenses in the amount awarded by the Court as described above and in the manner directed by the Court.

Failure by the Court to award fees and expenses to Plaintiffs' Counsel in the requested amount shall not invalidate or otherwise limit any of the other terms of the Settlement. Any failure of the Court to approve a request for attorneys' fees and expenses in whole or in part shall have no impact on the effectiveness of the Settlement.

The Released Persons shall have no responsibility or liability whatsoever for the allocation of the fees and expenses award among Plaintiffs' Counsel in the Action.  The Released Persons shall also have no responsibility or liability whatsoever with respect to the allocation of the fees and expenses award with respect to any other Person, entity or firm who may assert some claim thereto.

## VI.    CLASS ACTION DETERMINATION

The Court has ordered that, for purposes of the Settlement only, the Action has been conditionally certified as a class action and may be finally certified as a class action at the Settlement Hearing, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), on behalf of the Class.  If you are a Class member, you will be bound by any judgment entered in the Action whether or not you actually receive this Notice.  You may not opt out of the Class.

## VII.   ORDER AND FINAL JUDGMENT OF THE COURT

If, after Notice and the Settlement Hearing provided for herein, the Court approves this Settlement, the Parties will ask the Court to enter an Order and Final Judgment, which will, among other things:

1.  finally certify the Class, pursuant to the Federal Rules of Civil Procedure;

2.  approve the Settlement and adjudge the terms thereof to be fair, reasonable, adequate, and in the best interests of the Class, pursuant to Federal Rule of Civil Procedure 23(e);

3.  authorize and direct the performance of the Settlement in accordance with its terms and conditions and reserve jurisdiction to supervise the consummation of the Settlement provided herein;

4.  provide that, upon entry of the Judgment, each and all of the Releasing Persons shall be deemed to have fully, finally, and forever released, relinquished and discharged all Settled Claims (including Unknown Claims) against the Released Persons and shall be enjoined from suing the Released Persons with respect to any or all such Settled Claims;

5.  provide that, upon entry of the Judgment, each of the Defendants and Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally,

11

and forever released, relinquished and discharged, Plaintiffs, each and all of the Class Members, and Plaintiffs' Counsel from all claims (including Unknown Claims), based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Action or the Settled Claims, except to enforce the releases, waivers, covenants-not-to-sue, or other terms and conditions contained in the Stipulation;

6.  provide that neither the MOU, the Stipulation, the Judgment, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Settled Claim, or of any wrongdoing or liability of the Defendants or any Released Person; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or any Released Person, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal;

7.  provide that if the Settlement does not become Final in accordance with the terms of the Stipulation, then the Judgment shall be rendered null and void and shall be vacated and, in such event, all orders entered in connection therewith shall be vacated and rendered null and void; and

8.  dismiss the Action and all of the claims alleged therein with prejudice as to all Defendants as against Plaintiffs and all Releasing Persons, with no costs awarded to any Party except as provided in the Stipulation.

## VIII.  SETTLEMENT HEARING

The Court has scheduled a Settlement Hearing, which will be held on _____, 2016, at _____ _.m. CST, or at such later time as the Court may direct, at the Thomas D.

Lambros United States Federal Building and Courthouse, 125 Market Street, Youngstown, Ohio 44503, to: (1) determine whether the Court's preliminary certifications discussed herein should be made final; (2) determine whether the Settlement should be finally approved by the Court as fair, reasonable, adequate, and in the best interests of the Class; (3) determine whether a Final Judgment should be entered pursuant to the Stipulation; (4) hear and determine any objections to the Settlement or the application of Plaintiffs' Counsel in the Action for an award of attorneys' fees and expenses; (5) consider the joint application of Plaintiffs and Plaintiffs' Counsel for an award of attorneys' fees and expenses; and (6) rule on such other matters as the Court may deem appropriate.

The Court has reserved the right to adjourn the Settlement Hearing or any adjournment thereof, including the consideration of Plaintiffs application for attorneys' fees, without further notice of any kind.  The Court has also reserved the right to approve the Settlement at or after the Settlement Hearing with such modification(s) as may be consented to by the Parties to the Stipulation and without further notice to the Class.

## IX.  RIGHT TO APPEAR AT THE SETTLEMENT HEARING

Any member of the Class who objects to the Settlement, the Judgment to be entered in the Action, the joint application by Plaintiffs and Plaintiffs' Counsel for attorneys' fees and expenses, the class action determination, the adequacy of representation by Plaintiffs' Counsel, the dismissal of the Action, or who otherwise wishes to be heard, may appear in person or by his or her attorney at the Settlement Hearing at the Class member's expense and present evidence or argument that may be proper and relevant.  If you wish to do so, however, not later than fifteen (15) calendar days prior to the Settlement Hearing, you must file with the Court (a) a written notice of intention to appear; (b) proof of membership in the Class, by way of brokerage

statement, account statement, or other document evidencing ownership of shares of FirstMerit stock during the Class Period; (c) a detailed statement of the specific objections by the member of the Class to any matters before the Court; and (d) the grounds for such objections and the reasons why such member of the Class desires to appear and be heard, as well as all documents or writings such Person desires the Court to consider.  On or before such filing, such Person must serve these materials by hand or overnight mail on the following counsel of record:

Michael J. Palestina
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA 70447
(504) 455-1400
(504) 455-1498
***Attorneys for Lead Plaintiff Mary H. Wojno and Co-Lead Counsel***

Shannon L. Hopkins
LEVI & KORSINSKY, LLP
733 Summer Street, Suite 304
Stamford, CT 06901
Tel: (212) 363-7500
Fax: (866) 367-6510
***Attorneys for Lead Plaintiff Jack Wilkinson and Co-Lead Counsel***

Brian D. Long
RIGRODSKY & LONG, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Tel: (302) 295-5310
***Attorneys for Lead Plaintiff Michael Hafner and Co-Lead Counsel***

Lazar P. Raynal
William P. Schuman
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL  60606
***Attorneys for the Individual Defendants***

Stephen DiPrima
Benjamin Klein
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street

14

New York, NY 10019
***Attorneys for Huntington Defendants***

Unless the Court otherwise directs, no Person will be entitled to object or otherwise to be heard except upon serving and filing written objections as described above.  Any member of the Class who fails to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding.

Any Class member who does not object to the Settlement, the Final Judgment to be entered in the Action, the joint application by Plaintiffs and Plaintiffs' Counsel for attorneys' fees and expenses, the class action determination, the adequacy of representation by the Plaintiffs' Counsel, or the dismissal of the Action, need not do anything.

## X.    <u>INTERIM INJUNCTION</u>

Pending final determination of whether the Settlement provided for in the Stipulation should be approved, Plaintiffs and all Members of the Class, or any of them, are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement, prosecution, or instigation of any action asserting any Settled Claims (including Unknown Claims), either directly, representatively, derivatively, or in any other capacity, against any Released Person.

## XI.    <u>QUESTIONS ABOUT THE SETTLEMENT</u>

Inquiries or comments about the Settlement may be directed to the attention of Plaintiffs' Counsel at the following address:

Michael J. Palestina
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA 70447
(504) 455-1400

15

(504) 455-1498
*Attorneys for Lead Plaintiff Mary H. Wojno and Co-Lead Counsel*

Shannon L. Hopkins
LEVI & KORSINSKY, LLP
733 Summer Street, Suite 304
Stamford, CT 06901
Tel: (212) 363-7500
Fax: (866) 367-6510
*Attorneys for Lead Plaintiff Jack Wilkinson and Co-Lead Counsel*

Brian D. Long
RIGRODSKY & LONG, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Tel: (302) 295-5310
*Attorneys for Lead Plaintiff Michael Hafner and Co-Lead Counsel*

## XII.  NOTICE TO PERSONS OR ENTITIES HOLDING SHARES ON BEHALF OF OTHERS

If you held any FirstMerit common stock as a nominee for a beneficial owner on any date from January 26, 2016 to and including August 16, 2016, then within ten (10) calendar days after you receive this Notice, you must either: (1) send a copy of this Notice by first class mail to all such beneficial owners; or (2) provide a list of the names and addresses of such beneficial owners to the Notice Administrator:

> FirstMerit Corporation Shareholder Notice Administrator
> c/o KCC Class Action Services
> P.O. Box 43434
> Providence, RI  02940-3434
> FirstMeritShareholderLitigation@kccllc.com

If you choose to mail the Notice yourself, you may obtain from the Notice Administrator (without cost to you) as many additional copies of these documents as you will need to complete the mailing.  Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred in connection with forwarding

the Notice and which would not have been incurred but for the obligation to forward the Notice, upon submission of appropriate documentation to the Notice Administrator.

## XIII.  <u>SCOPE OF THIS NOTICE</u>

This Notice is not all-inclusive. The references in this Notice to the pleadings in the Action, the Stipulation, and other papers and proceedings are only summaries and do not purport to be comprehensive. For the full details of the Action, claims that have been asserted by the Parties and the terms and conditions of the Settlement, including a complete copy of the Stipulation, members of the Class are referred to the Court files in the Action. You or your attorney may examine the Court files during regular business hours of each business day at the Thomas D. Lambros United States Federal Building and Courthouse, 125 Market Street, Youngstown, Ohio 44503.  Questions or comments, including requests for a copy of the Stipulation and its exhibits, may be directed to Plaintiffs' Counsel.  Please do not address inquiries to the Court.

Dated:  **_____,** 2016

# EXHIBIT C

**Exhibit C**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTMERIT CORPORATION SHAREHOLDER LITIGATION | Lead Case No:  5:16-cv-00461 |
| | MASTER FILE |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## [PROPOSED] ORDER AND FINAL JUDGMENT

A hearing having been held before this Court on _____, 201__ to determine whether the terms and conditions of the Stipulation of Settlement dated September 28, 2016 (the "Stipulation"), and the terms and conditions of the settlement proposed in the Stipulation (the "Settlement") are fair, reasonable, and adequate for the settlement of all claims asserted in the above-captioned shareholder class action ("Action"); and whether the Settlement should be approved by this Court and the Order and Final Judgment should be entered herein; and the Court having considered all matters submitted to it at the hearing and otherwise;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED this ___ day of _____, 201__, AS FOLLOWS,

1.       This Order and Final Judgment ("Judgment") incorporates and makes part hereof the Stipulation, including the exhibits thereto.  Unless otherwise defined in this Judgment, the capitalized terms in the Judgment have the same meaning as they have in the Stipulation.

2.       This Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all members of the Class.

3.     The dissemination of the Notice pursuant to and in the manner prescribed in the Scheduling Order and Order Preliminarily Approving Proposed Settlement entered on _____, 2016 (the "Preliminary Approval Order"), according to the proof of such dissemination of the Notice to the Class filed with the Court, is hereby determined to be appropriate and reasonable notice under the circumstances, satisfying Fed. R. Civ. P. 23 ("Rule 23"), due process, and applicable law.

4.     The Court finds, for the sole purpose of settlement, that: (a) the Class is so numerous that joinder of all members is impracticable, thus Rule 23(a)(1) is satisfied; (b) there are questions of fact or law common to the Class, thus Rule 23(a)(2) is satisfied; (c) Plaintiffs' claims are typical of the claims of the Class, thus Rule 23(a)(3) is satisfied; (d) Plaintiffs and their counsel have and will fairly and adequately protect the interests of the Class, thus Rule 23(a)(4) is satisfied; and (e) in accordance with Rule 23(b)(1), a class action provides a fair and efficient method for adjudication of the controversy because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendants, and/or, as a practical matter, the disposition of the Action will influence the disposition of any pending or future identical cases brought by other members of the Class; and/or (f) in accordance with Rule 23(b)(2), the Action alleges that Defendant acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief is appropriate respecting the Class as a whole.

5.     Accordingly, the Court finds that the Action is a proper class action, for settlement purposes only, and hereby certifies the Action as a class action under Rules 23(a) and (b)(1) and/or (b)(2) on behalf of a non-opt-out class (the "Class") consisting of all record holders and beneficial holders of FirstMerit stock who held or owned such stock at any time during the

period beginning on and including January 26, 2016 through and including August 16, 2016 (the closing date of the Merger) (the "Class Period"), including any and all of their respective predecessors-in-interest, predecessors, successors-in-interest, successors, trustees, executors, administrators, estates, heirs, assigns, and transferees, immediate and remote, and any Person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns. Excluded from the Class are Defendants, members of their immediate families, and any Person, firm, trust, corporation or other entity related to, controlled by, or affiliated with, any Defendants, and the legal representatives, heirs, successors, and assigns of such excluded Persons.

6.      The Court hereby certifies, for settlement purposes only, Plaintiffs Mary H. Wojno, Jack Wilkinson, and Michael Hafner as Class Representatives, and their counsel, Kahn Swick & Foti, LLC, Levi & Korsinsky LLP, Rigrodsky & Long, P.A. as Class Counsel.

7.      The Court approves the Stipulation and the Settlement set forth therein as fair, reasonable, adequate, and in the best interests of Plaintiffs and the other members of the Settlement Class.  The Stipulation and the terms of the Settlement as described in the Stipulation are hereby approved in their entirety.  The Parties to the Stipulation are hereby authorized and directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation.

8.      The Action and all of the claims alleged therein are hereby dismissed on the merits with prejudice as to all Defendants as against Plaintiffs and each and all Releasing Persons (including all Members of the Class), with no costs awarded to any Party except as provided herein.

9.    As set forth in the Stipulation, and without limiting the breadth of the Stipulation, this Judgment shall not constitute any evidence or admission by any party herein that any acts of wrongdoing have been committed by any of the Parties to the Action and should not be deemed to create any inference that there is any liability therefore.

10.    Upon entry of this Judgment, each and all of the Releasing Persons shall be deemed to have fully, finally, and forever released, relinquished and discharged all Settled Claims (including Unknown Claims) against the Released Persons and shall be enjoined from suing the Released Persons with respect to any or all such Settled Claims.  For the avoidance of doubt:

(a)    "Releasing Persons" means Plaintiffs Mary H. Wojno, Jack Wilkinson, and Michael Hafner each Member of the Class (as defined above).

(b)    "Released Persons" means each of the Defendants, and each of their respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, funding sources, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives,

accountants, insurers, coinsurers, reinsurers, and associates of each and all of the foregoing.

(c)    "Settled Claims" means any and all claims (including Unknown Claims) of any kind whatsoever that any or all of the Releasing Persons ever had or now have or could, can or might assert against any of the Released Persons which: (a) are based on his, her, or its ownership of FirstMerit common stock during the Class Period; (b) are based on any state's statute, common law or rule; any federal securities laws or rules concerning disclosure; or any "aiding and abetting" theories related thereto; and (c) arise out of or relate to, directly or indirectly, the conduct or omission by any Released Person in the process leading up to, the negotiation of, discussions concerning, and/or the terms of the Merger, or the Merger Agreement; the adequacy, accuracy, and completeness of any disclosures made by or on behalf of any Released Person relating to the Merger, including, but not limited to, the preliminary proxy, the Joint Proxy, and the Supplemental Disclosures; the allegations in any complaint or amended complaint filed in the Action; and/or the conduct or omission by any of the Released Persons in connection with the negotiation or execution of the Stipulation and the Settlement; provided, however, that the Settled Claims shall not include, (i) any claims under the federal or state securities laws alleging the existence of material inaccuracies in Huntington's financial statements (notwithstanding, Plaintiffs acknowledge that they presently have no basis to assert any inaccuracies in such financial statements), (ii) claims to enforce this Stipulation, or the Settlement, (iii) claims for appraisal under Section 1701.85 of the Ohio General Corporation Law or (iv) any claims that arise under the Hart-Scott-Rodino, Sherman, or Clayton Acts, or any other state or federal antitrust law.

(d)     "Unknown Claims" means any claim, cause of action, damage or harm which any or all of the Releasing Persons do not know or suspect to exist at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its Settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this Settlement.  With respect to any and all Settled Claims, the Parties stipulate and agree that, upon the Effective Date, the Plaintiffs shall expressly, and each of the Releasing Persons shall be deemed to have, and by operation of the Judgment shall have, waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM  OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, each of the Releasing Persons shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or international or foreign law, which is similar, comparable or equivalent to California Civil Code §1542.  The Releasing Persons may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Settled Claims, but each Releasing Person, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Settled Claims and Unknown Claims, known or unknown, suspected or unsuspected, contingent or non contingent, whether or not concealed or hidden, which now exist, or heretofore have existed or

hereafter may exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Parties acknowledge, and the Releasing Persons shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this release is a part.

11.     Upon entry of the Judgment, each of the Defendants and Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged, Plaintiffs, each and all of the Class Members, and Plaintiffs' Counsel from all claims (including Unknown Claims), based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Action or the Settled Claims, except to enforce the releases, waivers, covenants-not-to-sue, or other terms and conditions contained in the Stipulation.

12.     Neither the Memorandum of Understanding ("MOU"), the Stipulation, this Judgment, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Settled Claim, or of any wrongdoing or liability of the Defendants or any Released Person; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or any Released Person, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  The Released Persons may file this Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on

principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.     After consideration of Plaintiffs' application for reasonable fees and reimbursement of expenses, Plaintiffs' Counsel is hereby awarded $_____ in attorneys' fees and expenses, which amounts the Court finds to be fair and reasonable.  This amount shall be paid pursuant to the provisions of the Stipulation.  Neither counsel representing Plaintiffs in the Action nor Plaintiffs shall make any further or additional application for attorneys' fees and expenses in connection with the Action to the Court or any other court, except as contemplated by the Stipulation.  Plaintiffs' Counsel shall be jointly and severally obligated to return to FirstMerit or its successor in interest any excess amounts paid as attorneys' fees and costs plus accrued interest if, as a result of any appeal and/or further proceedings or remand, or successful collateral attack, the fee or cost award is lowered or reversed.  An appeal of the portion of this Judgment awarding attorneys' fees and expenses shall have no effect on the finality of any other portion of the Judgment.

14.     The Class Action Fairness Act ("CAFA") Notice has been given to the relevant public officials; proof of the mailing of the CAFA Notice was filed with the Court; and full opportunity to be heard has been offered to all recipients of the CAFA Notice.  The CAFA Notice is hereby determined to have been given in compliance with each of the requirements of 28 U.S.C. § 1715.

15.     Without further order of this Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

16.     If the Effective Date does not occur for any reason, unless the Parties otherwise agree in writing as contemplated in the Stipulation, the Parties shall be restored to their respective positions in the Action as of the time immediately prior to the date of the execution of the MOU, except that nothing herein shall be construed to require rescission of the Merger, in whole or in any part.  In such event, the other terms and provisions of the Stipulation, except for Plaintiffs' Counsels' joint and several obligations to make refunds or repayments, plus accrued interest, to FirstMerit or its successor-in-interest, shall have no further force or effect with respect to the Parties and neither this Judgment, the Stipulation nor the MOU, the contents of these document or any negotiations, statements or proceedings in connection therewith, or any documents or statements made in connection with Confirmatory Discovery, shall be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court prior to the date of such event in accordance with the terms of the Stipulation shall be treated as vacated by an order entered *nunc pro tunc*.

17.     Without affecting the finality of this Judgment in any way, this Court reserves jurisdiction over all matters relating to the administration, consummation, and enforcement of the Settlement and this Judgment.

18.     The Clerk of the Court is directed to enter and docket this Judgment.


_____
The Honorable Benita Y. Pearson
United States District Judge